Judge Hitchcock
delivered the opinion of the court:
There has been such multifarious legislation upon the subject of taxation, and of the sale of lands for taxes in this state, as to create some confusion ; and where a particular case is presented, there is no little difficulty in ascertaining whether the sale has been in conformity with the law, especially if it be in any way connected with the early legislation upon the subject.
The lessors of the plaintiff derive title to the premises in controversy, in virtue of the last will and testament of David Buckley, the patentee, and this title is perfect unless it has been divested by some of the tax sales. The first of these sales, in point of time, was on December 8, 1828, and was intended to be made in pursuance of the law of January 29, 1827.
It appears that this land was originally entered for taxation in the' year 1813, in the ñamo of John Clemson, and continued so to be entered until 1823, the taxes for the whole period being unpaid. Any person acquainted with the history of the state knows of the difficulty that existed in the collection of taxes in early times, and of the difficulty of sustaining sales which were made of lands for the non-payment of taxes. In consequence of these difficulties, sales wore ordered by the legislature from year to year to be suspended, and it is believed that none took place from 1814 until after 1822. Penalties, however, were constantly accruing previous to 1820, at the rate of 100 per cent, upon the amount of tax for each year; and where lands had been twice returned delinquent, they were no longer continued upon the duplicate, but'were subject to sale, and were only restored by the payment of all arrearages of taxes and penalty. On February 8,1820, a law “ levying a tax on land” *was enacted (2 Chase’s Stat. 1101), materially changing the system, so far as the collection of taxes was concerned. Previous to this time, a difference had been made between resident and non-resident proprietors of land. The taxes of the former were collected in the several counties where they resided; but for the convenience of the latter, the state had been divided into six districts, called collection districts, and for each district a collector appointed, to whom they were required to pay their taxes; but by *187 this law, the taxes, both of resident and non-resident proprietors, were required to be paid in the county where the lands were situate. The office of 'county auditor was created, and his duties defined ; one of which was to take a list of all lands in his county, according to their proper rate, etc. The auditor of state was required to make out and transmit to the several county auditors “ a complete list of all lands, the property of non-resident proprietors, in each of the several counties within the state, and also a complete list of all delinquent lands, whether resident or nonresident, in each of the several counties, with the amount of tax, penalty, and interest charged thereon.” In making out the duplicate, it is made the duty of the county auditor to enter the rate and amount of tax charged upon each tract. Nothing is said about his including in the duplicate the arrearages of taxes and penalties accrued before the passage of the act, but it is made his duty to transmit to the auditor of state, by the collector, “a list of all tracts of land within his proper county, in which the taxes have not been paid to the collector for the current year.” In section 61, it is enacted, “ that the sale of all lands, which by the laws now in force would be exposed to sale for the non-payment of taxes, interest, and penalties due thereon, upon the first Monday in December, one thousand eight hundred and twenty, shall be, and the same are hereby postponed until the first Monday in December, one thousand eight hundred and twenty-two.” The lands in the section referred to, are those which had been previously twice returned delinquent for the non-payment of th'e taxes.
It seemed to be necessary to refer to so much of the law of 1820, in order to a correct construction of that of January 30, 1822, “ providing for the remission of penalties, and for the sale of lands for taxes.” It will be observed, that this law was enacted within the time prescribed for sales of land by the act of 1820. By this law, the state treasurer, and the treasurers of counties, are authorized to receive until the 10th *day of December then next, all arrearages of land taxes which became due previous to the year 1820, with legal interest on each year’s taxes from the time the same was due, and if the taxes and interest were paid, then the penalties which had accrued previous tó 1820 were to be remitted. 2 Chase’s Stat. 1216. This provision did not extend to lands returned delinquent since 1820, the legislature evidently intending to make a difference between the two classes of delin *188 quency, probably because it was supposed that there had been graater irregularity under the former laws than under this, and the penalty, too, was much less under this latter law than under the former.
If the tax and interest are not paid according to the provisions of the second section of this act, then the state auditor is directed to “ make out a list, or duplicate, of all land upon which any arrears of taxes, penalties, and interest may still remain due previous to the year 1820, charging each tract, or part of a tract, with all such arrearages .of taxes, penalties, and interest, which may actually remain due and unpaid, or remitted as hereinbefore provided, and he shall also add to such charge any.taxes, penalties, and interest, which may have accrued on such land since the commencement of the year 1820 and the. state auditor shall make out from his general list or duplicate a separate list, or duplicate, of delinquent land within the bounds of each county, as nearly as he can ascertain the same, which he shall certify under his official seal, and transmit the same to the auditor of the proper county.”
Section 5 then prescribes the steps to be taken by the county auditor, in order to obtain, on motion, a judgment of the court of common pleas of the proper county, which judgment that court is authorized and required to render, for the amount appearing to be due to the state, together with costs of suit. If the motion is contested, and the contestor requires a jury trial, he is entitled to it. In-pursuance of the judgment, the county auditor is authorized to sell the lands, but they can not be sold for a sum less than sufficient to satisfy the judgment. The last section of the act prescribes, that if "the land is offered for sale, and remains unsold for want of bidders, “ the same shall be considered as forfeited to the state, and shall become the property of the State of Ohio, and be subject to be disposed of as any future legislature may direct.”
Under this law, the lands in controversy being in arrear for taxes from 1813, at the October term of the court of common *pleas, 1823, a judgment was rendered by that court, in favor of the State of Ohio, for the taxes, penalties, and interest then due, amounting to $111.60, together with the sum of $5.60 costs. In pursuance of this judgment, the land was offered for sale, on July 12, 1824, but was not sold for want of bidders. Not *189 being sold, it was forfeited to, and became the property of the state, to be disposed of as any future legislature might direct.
The-next act having a bearing upon this case is the act of Jan•uary 29, 1827, entitled, “an act for the remission of penalties and for the sale of land for taxes.” 3 Chase’s Stat. 1560. This statute, as is apparent from the first section, is applicable'only to lands which were in arrear for taxes previous to 1820. Like the act of 1822, it authorized the treasurer of state, and the respective County treasurers, at any time previous to the second Monday of December thereafter, to receive all arrearages of land taxes which became due previous to 1820, with the interest thereon from the time such taxes became due; and provides, that if the taxes and interest are paid within the time specified, “together with the tax, interest, and penalties accruing thereon subsequent to January 1, 1820, all penalties which may have accrued thereon prior to the year 1820, shall be and the same are hereby remitted.” It further provides, that if the taxes, etc., are not paid, the auditor of state shall “transmit to the several county auditors a correct list of the land within their respective counties on which arrearages of taxes are due and unpaid previous to the year 1820, whether said lands have or have not been forfeited to the state, charging each tract and part of a tract with all such arrearages of tax and interest which may actually remain due and unpaid prior to that time; and he shall add to such charge any taxes, penalties, and interest which may have accrued on such land since the commencement of the year 1820.” The auditor of each county is then required, if these taxes are not paid on or before October 15,1828, after having given the notice specified in the act, to sell the lands upon which the taxes-are in arrear, on the second Monday in Decembér thereafter, at public auction, to the highest bidder. Under the act of 1822 the land could not be sold unless for'the amount of the judgment; but under the act of 1827 it was to be sold to ^the highest .bidder. The county auditor is further required to make to the purchaser or purchasers, “ his or.their heirs, or assignee or assignees,” a deed for the land sold, “which deed shall convey to the purchaser or purchasers, his or their heirs, or assignee or assignees, a good and sufficient title to the land so sold; and such deed shall be received in all courts in this state as good evidence of title to the purchaser or purchasers, his or their heirs, assignee or assignees; nor shall the title conveyed by said deed to the pur *190 chaser or purchasers, his or their heirs, assignee or assigns be invalidated, or affected by any error previously made in listing, taxing, or conveying said land.”
In pursuance of this law, the land in controversy being in arrear for taxes since 1813, having been forfeited to the state in 1824, was, on December 8,1828, offered for sale and sold to one James Woods, he being the highest and best bidder, and bidding twenty-five cents. Wood assigned his certificate of purchase to Andrew Ramsey, to whom the auditor of Fayette county made a deed on June 23,1829. Ramsey, afterward, and before the commencement of this action, conveyed to Clement A. Buckley, one of the lessors of the plaintiff.
In this sale to Wood, it appears that the taxes were included only up to 1825 inclusive, instead of including all up to 1827, according to the provisions of the act last referred to, and an objection is made to this sale, that this land was not within the act of 1827, it having been forfeited for the non-payment of taxes, as well after as before the year 1820. This forfeiture was under the law of 1822, and the provisions of that act are express that the judgment provided for shall be for the amount of tax due, as well after as before 1820, and there could be no forfeiture for the non-payment of the taxes before that period merely, unless in cases where the taxes after that period have been punctually paid, and it is believed such cases were rare. • In truth, at the time of the change of the system in that year, most, if not all, the delinquent lands were subject to sale under pre-existing laws, and would have been sold in the month of December, 1820, had not the sale been postponed by the act of the 8th of February of that year. It seems to the court that the law of 1827 was intended expressly for lands situated as was the land now in controversy and that it might with propriety be sold under that law. It was sold, and for aught that at present appears, we incline to hold the sale legal, especially as it is provided that titles made under the law, in ^pursuance of which this land was sold, can not “be invalidated or affected by any error previously made in listing, taxing, selling, or conveying said land.”
Considering this sale as having been legal, the lessors of the plaintiff were, by its effect, deprived of the title which they originally had to the premises in controversy, and the same became vested before the commencement of this action in Clement A. Buckley, one of those lessors.
*191 The defendant claims title under a sale of lands forfeited for the non-payment of taxes, made on July 8, 1833. It seems that this land, in the year 1826, was entered upon the tax duplicate in the name of John Clemson, under the law of February 3, 1825, “establishing an equitable mode of levying the taxes of this state” (2 Chase’s Stat. 1176), and was, in the fall of that year, in pursuance of tbe law then in force, returned delinquent for the nonpayment of the tax of that year. It was again entered upon the duplicate for the year 1827, and the tax being unpaid, was offered for .sale, but was not sold for want of bidders ; and not being sold, was, under the law then in force, forfeited to the state. If was sold, in pursuance of this forfeiture, on July 8, 1833, and it is under this sale that the defendant claims title. If the land was properly entered upon the duplicate -in 1826, I discover nothing in the subsequent proceedings to vitiate this forfeiture. By the act of 1825, “ establishing an equitable mode of levying the taxes of this state,” an entire change was made in the system of taxation, so far as the mode was concerned, although not as to the manner of collection. Before the enactment of that law, lands were taxed according to their quality, being distinguished as first, second, and third rate; but by that law they were to be taxed according to their value. This law, however, does not propose to tax lands not the property of individuals or bodies corporate and politic. In the first section, it is declared that the property of such persons, natural and artificial, shall be chargeable with tax. The land in controversy was not the property of an individual, but was the property of the State of Ohio, and it can not be supposed it was the intention of the state to levy a tax upon its own lands. I say it was the property of the state, and it must be so considered, if force is to be given to the law of 1822. Under that law it has been offered for sale to satisfy a judgment for the taxes, and was not sold for want of bidders, whereby it was forfeited to, and became the property of the state. Not being individual property, it was not property ^entered upon the duplicate for taxation in 1826 and, of course, there could be no forfeiture in 1827. This law of 1825 requires that a list shall be made of all delinquent lands, but it says nothing about forfeited lands, and it was undoubtedly the intention to leave them as they wore, to be disposed of as the legislature might afterward prescribe.
On January 18, 1826, an act was passed “providing for the *192 collection of taxes on lands and town lots, which have accrued prior to the year 1S26 ” (3 Chase’s Stat. 1819); and under the provisions of this law, the arrears of taxes upon the land in controversy might have been collected but for the previous forfeiture. That law applies alone, not to forfeited, but to delinquent lands; and, it is believed, that there is no law prescribing the mode of disposing of forfeited land prior to the act of January 29, 1827, before referred to.
But it is said that the taxes for the years 1826 and 1827 were not included when the land was sold for the taxes in 1828. This appears to have been the case, hut it does not follow that the land was properly entered upon the duplicate in 1826. The taxes for these years should have been added, and that they were not, is owing to the fault, or mistake, of the agents of the government. The purchaser, under that law, must not be made to suffer on this account; he purchased the land under a law requiring it to he sold for all the arrearages of taxes, up to the time of sale, and he must take it divested of all previous.charges of that character.
For these reasons, we are of opinion that the defendant can not protect himself under his claim of title. In truth, he shows no title to the land in controversy.
But it is objected, for the defendant, that the plaintiff can not recover, because the title is not in all his lessors, but iu one of them, to wit: in Clement A. Buckley. The objection is well taken ; but as this point was not raised upon the circuit, we will not render judgment in the case, but remand it to the proper county, with leave to the plaintiff to amend upon'the payment of costs.