## No. 13,202.

### THORNWELL GACHET VS. CITY OF NEW ORLEANS.

#### SYLLABUS.

1. Before the State taxes for a given year became due and demandable, the lot of ground upon which the same had been assessed passed out of the hands of private ownership into the hands of public ownership—HELD: The moment public ownership attached developing liability to taxation was arrested.

52　813
110　409
110　412
d110　838
52　813
f114　980

2. The tax law of a State applies to persons only, and not to political bodies like municipal corporations, which exercise in different degrees the sovereignty of the State.

3. Hence it is, that when property upon which State taxes are assessed is subsequently acquired by a political subdivision of the State, like the city of New Orleans, to which certain powers of sovereignty and government have been delegated by the State, which property is acquired for purposes of public utility coming within the scope of the powers so delegated, and is immediately applied to such purposes of public utilty, the taxes so assessed in favor of the State upon the same cease to be exigible.

4. It pertains to the public policy of the State not to exact taxation on property so held and used.

5. Within the scope of the powers delegated to it, the city of New Orleans stands for the State, and property acquired by it in the due execution of its mandate from the State, stands *in consimili casu* with property owned by the State itself, and taxes antecedently assessed in favor of the State upon such property must be held abated. It is a commingling of the qualities of debtor and creditor in such way that there arises a confusion of right extinguishing the obligation.

A PPEAL from the Civil District Court, Parish of Orleans—
  *Theard, J.*

*William S. Benedict* for Plaintiff, Appellant.

*James J. McLoughlin,* Assistant City Attorney, and *Samuel L. Gilmore,* City Attorney, for Defendant, Appellee.

The opinion of the court was delivered by

BLANCHARD, J.   Defendant purchased lot No. 8 in square 158 fronting on Magazine street, New Orleans, from one Hoxie on the 6th of July, 1885.

Its purchase was authorized by municipal ordinance duly adopted.

The consideration paid was $2000 cash.

The object of the purchase by the city was to obtain a site on which to erect an engine house for one of its fire companies, and the engine house was immediately erected and the property has been from that day to this, and still is, in use by the city as an engine house and as pertaining to its fire department.

It is recited in the act of sale to the city that all taxes due and exigible on the property had been paid, except the State and city taxes for the year 1885, payment of which the city assumed.

The lot prior to 1885 had been owned by the estate of George P. McConnell, and Hoxie, the city's vendor, had acquired it from the

estate of McConnell some ten or twelve days only before he sold to the city.

On the assessment rolls of 1885 the lot was assessed to McConnell. Hoxie did not own it long enough for any taxes to be assessed against it in his name. So, when he sold to the city, the State and city taxes, which the vendee assumed payment of, were then assessed in the name of McConnell.

Having acquired the lot for a public purpose within its powers, and having immediately utilized it for such public purpose, the city offi- cials seem to have looked upon the city's assumption of payment of the State taxes for 1885 as purely nominal, and that once the title had vested in the city, no claim for State taxes was enforceable against the property.

Accordingly, no steps were taken to pay the State taxes, and, of course, the taxes due the city, which had also been assumed, were ex- tinguished by confusion.

But the State Tax Collector does not seem to have shared the view that the city's purchase and use of the lot for a public purpose re- lieved it from the pursuit of the State in enforcement of its demand for taxes, or else the city's acquisition was lost sight of, and the taxes for 1885 appearing as unpaid upon the rolls, the lot in question was proceeded against, and offered for sale for taxes claimed to be due thereon, and in default of bidders was, by the Tax Collector, adjudi- cated to the State. This was in July, 1886. In October following, based upon this adjudication, the Tax Collector executed a formal notarial act of sale of the property to the State.

When this porperty was thus adjudicated and title transferred to the State, for State taxes of 1885, the assessment rolls in the State Tax Collector's office *for 1886* showed the lot in question to be owned by the city, for it appeared on said rolls as assessed to the city for 1886 and opposite the assessment it was marked "Free".

The title thus acquired by the State was held by it for three years, and then, in June, 1889, it was adjudicated and sold to Henry H. Sawyer for $26.17, being the amount claimed to be due the State on the lot on account of the taxes for 1885.

During the three years the State held the title as aforesaid the property appeared each year upon the assessment rolls as owned by and assessed to the city, and opposite such assessment always ap- peared the word "Free", indicating its exemption from taxation.

From the time Sawyer became the adjudicatee as aforesaid, down to the present time, the lot has continued to be assessed in the name of the city and to be marked "Free" on the assessment rolls; and it does not appear that it was ever assessed to Sawyer, or that he has ever paid a tax on it.

Sawyer never took possession and never sued for possession, nor to be decreed to be the owner. He contented himself with serving annually upon the city in writing a notice of his claim of ownership and demand for rents.

This continued from the date of his purchase from the State, July, 1886, down to January, 1898, when, by notarial act, he sold and transferred to Thornwell Gachet, plaintiff herein, for the consideration of $125, all his right, title, interest and claim of ownership in and to the property.

It is noteworthy that a clause in this act of conveyance recites:— "According to the State and city tax-researches hereto annexed the said property is clear of all taxes up to and including the year 1897".

That was true, the property was *clear* of all taxes, but it was so because the same had been assessed to the city and was for that reason held "free" of taxes. It was not because Sawyer, or any one else, had *paid* the taxes.

In July following his purchase, Gachet brought this action, petitory in character, to be decreed the owner of the property and for judgment for the rental value thereof from August, 1889, at the rate of $100 per month.

The defense is that the city acquired a valid title to the property which still remains in her. Further, that the property is public property and used for public purposes, and the prescriptions of one, two, three and five years are pleaded.

The judgment below was favorable to defendant and plaintiff prosecutes this appeal.

From the foregoing statement of the case the legal conclusions determinative of the controversy are easily deducible.

When the city of New Orleans purchased the lot, one-half only of the year 1885 had elapsed, and it cannot be said the State taxes for 1885 had yet become due and exigible. The taxes for 1885 did not become due until the tax roll of that year had been deposited in the office of the mortgage records, and by Section 32 of Act 96 of 1882, this deposit of the tax roll was not required to be made before the last

day of August of the year, and by Section 7 of Act 107 of 1884 the tax roll for the city of New Orleans was not required to be furnished by the Board of Assessors to the Tax Collector before the 1st of October of the year, which assessment roll, the statute declared, should serve as the basis for the State and city taxes for the year in which the same was made.

By Section 8 of Act 107 of 1884 the Board of Assessors for the parish of Orleans was given until July 31st of each year in which to complete the assessment of property for taxes, and after such completion the rolls were, by direction of Section 9 of the statute aforesaid, to be submitted to the Assessment Committee appointed by the City Council for its inspection and review, and this Committee on Assessments was not required to meet for this purpose until the second Monday in August of each year.

The effect of these provisions of the law is to show that when the city acquired title to the lot of ground in controversy, the assessment of the same for State taxes for the year 1885 was not even in a completed state—much less were any taxes for 1885 then *due* on the property. Nor did such taxes for 1885 become *delinquent* until after December 31st, 1885.

Section 40, Act 96 of 1882.

No State taxes, therefore, on the lot for the year 1885 had yet matured and become demandable when the city purchased, and all State taxes prior to 1885 had been paid.

Before the State taxes for 1885 became due and demandable the property had passed out of the hands of private ownership into the hands of public ownership.

Private ownership implies liability for taxes; public ownership immunity from taxation.

Property belonging to the city of New Orleans and used for public purposes is public property and owes no taxes.

Constitution 1898, Art. 230.

The moment public ownership of the lot attached—the moment it passed from the hands of Hoxie to the city—developing liability to taxation was arrested, and in point of fact and law the State taxes for 1885 on the lot, under the assessment made in the name of the Estate of McConnell, Hoxie's vendor, never reached the point of maturity. The tax never became due, nor delinquent, and the lot could not be sold for taxes until delinquency had ensued.

It follows that the Tax Collector was without authority to proceed as he did in the attempt to enforce payment of taxes claimed to be due the State for 1885, and that his action in the premises was void.

Neither the adjudication made of it by him to the State, nor his later transfer of the State's title to Sawyer, can be adjudged to have had any effect. Sawyer acquired no title and could convey none to the plaintiff herein.

"The tax law of a State", says Desty in his work on Taxation, Vol. 1, p. 48, "applies to persons only, and not at all to political bodies like municipal corporations, which exercise in different degrees the sovereignty of the State".

Hence it is, that when property upon which State taxes are assessed is acquired by a political subdivision of the State, like the city of New Orleans, to which certain powers of sovereignty and government have been delegated by the State, which property is acquired for purposes of public utility coming within the scope of the powers so delegated, and is immediately dedicated or applied to such purposes of public utility, the taxes so assessed in favor of the State upon the same cease to be exigible.

It pertains to the public policy of the State not to exact taxation on property so held and used.

Within the scope of the powers delegated to it the city stands for the State, and property acquired by the city in the due execution of its mandate from the State stands *in consimili casu* with property owned by the State itself, and taxes assessed in favor of the State upon such property must be held abated. It is a commingling of the qualities of debtor and creditor in such way that there arises a confusion of right extinguishing the obligation. C. C. 2217.

The assumption of the city, in the act of purchase from Hoxie, of the payment of the State taxes for 1885, can be viewed as having no other effect than as a guaranty to Hoxie and his vendor, the Estate of McConnell, that they would be held harmless as against any attempt on the part of the State to collect the tax from them, or either of them. In this respect, the city was to stand between them and the State.

Such assumption can, by no means, be held as having the effect of authorizing the State to sell the lot for the taxes of 1885, if the city failed to pay the same, when the lot, by virtue of its acquisition by the city, assumed the character of "public property", entitled to immunity from pursuit for taxes assessed against it.

If, without the city's assumption of the taxes in the act of purchase, the lot would be free from the pursuit of the tax-gatherer, its assumption of the taxes did not lift the barricade and give the tax-gatherer a free hand.

The law alone must be looked to for his authority, and in the case of property becoming "public property", like the lot in question, his authority over it in the matter of the enforcement of taxes ceased.

Judgment affirmed.