[No. 10610. Department Two. December 16, 1912.]

THE STATE OF WASHINGTON, *Appellant*, v. SNOHOMISH COUNTY *et al.*, *Respondents.*[1]

TAXATION—PUBLIC PROPERTY—ACQUISITION BEFORE LEVY. Under principles of public policy and Const., art. 7, § 2, and Rem. & Bal. Code, § 9098, exempting state property from taxation, lands purchased by the state in the months of May and August, cannot be subjected to the taxes levied for that year, in view of the fact that the levy of the tax cannot be made until October; since the development of liability for taxes was arrested the moment public ownership attached.

TAXATION—LIEN ON LAND—RELATION—NECESSITY OF LEVY. Rem. & Bal. Code, § 9235, making the lien for taxes on real estate commence by relation on March 1 of the year in which they were levied, creates only an incipient or inchoate lien to become complete only on the making of a valid levy.

TAXATION—LIEN—ACQUISITION OF LAND BY STATE. A tax certificate upon land purchased by the state constitutes a mere cloud and not a lien, in view of the fact that there is no statutory authority for enforcing the lien against the state.

Appeal from a judgment of the superior court for Snohomish county, Black, J., entered April 18, 1912, dismissing an action to cancel tax certificates, upon sustaining a demurrer to the complaint. Reversed.

[1]Reported in 128 Pac. 667.

*The Attorney General* and *S. H. Kelleran*, for appellant. *Ralph C. Bell*, for respondent.

ELLIS, J.—This action was brought by the state of Washington for the cancellation of certain tax certificates upon, and to quiet its title to, lands purchased by it as a site for the Washington state reformatory. The complaint alleges, in substance, that the state purchased a quarter section of land in Snohomish county on May 8, 1907, and two other quarter sections on August 9, 1907; that, at all times since the purchase, the state has been in possession of these lands, using them for the purposes of the reformatory, and that on July 1, 1909, the county treasurer of Snohomish county issued severally three certificates of delinquency to the defendant Fred Everett, for the delinquent taxes against each quarter section for the years 1907 and 1908. The defendant Snohomish county interposed a demurrer to the complaint. By stipulation it was agreed that the complaint stated a cause of action in relation to the taxes for the year 1908, and that the demurrer should be treated as directed to the complaint only as referred to the taxes for the year 1907. Upon this stipulation, the demurrer was sustained. The plaintiff elected to stand upon its complaint, and the cause was dismissed. The state appealed.

The single question for our determination is this: Can real estate, in private ownership on March 1, 1907, but in public ownership when the taxes for that year were levied, be subjected to the payment of such taxes? It is a general rule, grounded in public policy, that since the power of taxation is a necessary attribute of sovereignty, the general tax laws of the state are presumed to operate upon private, not public, property, in the absence of a clear intention to the contrary. It is declared by the supreme court of the United States, in *Van Brocklin v. State of Tennessee*, 117 U. S. 151, 173, 174, upon copious authority, that:

11—71 WASH.

"General tax acts of a state are never, without the clearest words, held to include its own property, or that of its municipal corporations, although not in terms exempted from taxation. *Buckley v. Osburn,* 8 Ohio 180, 187; *Piper v. Singer,* 4 S. & R. 354; *Directors of the Poor v. School Directors,* 42 Penn. St. 21; *People v. Doe,* 36 California, 220; *Worcester County v. Worcester,* 116 Mass. 193; *Trustees of Public Schools v. Trenton,* 3 Stew. (N. J.) 618, 667; *Rochester v. Rush,* 80 N. Y. 302; *State v. Hartford,* 50 Conn. 89."

See, also, *Gachet v. New Orleans,* 52 La. Ann. 813, 27 South. 348; 1 Desty, Taxation, p. 48.

But we are not relegated solely to this general principle. It is the public policy of this state, as declared both by constitutional provision and by statutory enactment, that property belonging to the nation, state, any school district, county or municipal corporation, shall be exempt from taxation. Const., art. 7, § 2; Rem. & Bal. Code, § 9098. This being premised, let us examine the statute prescribing the lien for taxes in the light of the general process of taxation, in order to determine whether, either expressly or by implication, the taxes for 1907 ever became a lien upon the property in question. The statute declaring the lien is as follows:

"The taxes assessed upon real property shall be a lien thereon from and including the first day of March in the year in which they are levied until the same are paid, but as between a grantor and grantee such lien shall not attach until the first Monday of February of the succeeding year. The taxes assessed upon personal property shall be a lien upon all the real and personal property of the person assessed, from and after the date upon which such assessment is made, and no sale or transfer of either real or personal property shall in any way affect the lien for such taxes upon such property." Rem. & Bal. Code, § 9235.

It will be noted that this section contemplates a levy as well as an assessment in according the lien for a real estate tax, while as to personal property taxes the word "assessment" alone is used. It will also be noted that this section does not expressly, nor by necessary implication, authorize

a lien for taxes upon state property, at any time nor upon any condition. Such a lien can, therefore, be sustained only upon the theory that it attached as a complete and subsisting lien prior to the passing of the property into public ownership. The attachment of the lien here provided for, as and from March 1, in the year of the levy, presupposes that a valid levy as affecting the particular property can and will be made by following the general taxation law developing a valid tax. As pointed out by Judge Donworth in *United States v. Pierce County*, 193 Fed. 529, an examination of the many sections of that law makes it clear that March 1 is arbitrarily taken as the beginning of the taxation year. The process of taxation is initiated on that day by the assessor then beginning the valuation of all property in the county, fixing the valuation of each property as of that date. The work of valuation necessarily covers a considerable period of time. As the next step in the process, the board of equalization, meeting in August, revises the assessment as made by the assessor. Thereafter, in September, and as another step in the process, the corporate authorities of the cities, towns, and school districts estimate the amount of revenue needed for their respective uses; and finally, as the last step in the process of taxation, the board of county commissioners and other taxing authorities in October levy the tax in specific sums. Then for the first time the concept of a tax is fully realized. The fact that the lien of the tax so created is by relation attached to specific property as of the date of the initiation of the process on March 1, cannot do away with the necessity of pursuing the whole statutory proceeding before any tax is created so as to attach as a lien as of that or any date. While the state has power for the purposes of the lien to treat the entire proceeding as having been taken at any given time, that fact does not do away with the necessity of any step in the proceeding. It seems self-evident that there can be no valid or effective lien for a tax until there is a valid tax in some specific amount.

"For, in the nature of things, no tax or assessment can exist so as to become a lien or incumbrance upon real estate until the amount thereof is ascertained and determined." Black, Tax Titles (2d ed.), § 189.

"The mere fact that the property ·owned on the 1st day of January became liable to taxes for that fiscal year would not avail for the purpose of taxation, without an assessment and levy. Taxes not assessed or levied can never become an effectual lien." *Bannon v. Burnes,* 39 Fed. 892, 898.

"There can be no real or effective lien until the amount of the taxes is ascertained and assessed. . . . Under such provisions of law, when the rate of taxes is fixed and the amount determined and levied, the lien for such amount relates back and attaches as of the date specified in the statute." *Territory v. Perrin,* 9 Ariz. 316, 320, 83 Pac. 361.

See, also, *Gillmor v. Dale,* 27 Utah 372, 75 Pac. 932.

Obviously the doctrine of relation presupposes a valid creation. It seems equally plain that the creation of a valid tax implies the existence of a susceptible subject of taxation at every stage of the process of such creation. Since, on general principles of public policy and by both constitutional declaration and statutory enactment, lands while held in public ownership are exempt from taxation, the land here in question was not, during any step in the proceedings creating the tax, after August 9, 1907, when it passed to the state, a susceptible subject of taxation. It follows that, at that time, the developing process of imposing the tax as a valid creation was arrested.

"The moment public ownership of the lot attached—the moment it passed from the hands of Hoxie to the city—developing liability to taxation was arrested, and in point of fact and law the state taxes for 1885 on the lot, under the assessment made in the name of the Estate of McConnell, Hoxie's vendor, never reached the point of maturity. The tax never became due, nor delinquent, and the lot could not be sold for taxes until delinquency has ensued." *Gachet v. New Orleans, supra.*

"Lands acquired for public purposes during the period between the first and final steps of taxation are exempt from

taxes levied during the year in which they are acquired."
*Territory v. Perrin, supra.*

See, also, *United States v. Pierce County, Bannon v. Burnes,*
and *Gillmor v. Dale, supra.*

There is no distinction in this respect between purchases
by the United States and purchases by the state or a mu-
nicipality for strictly public uses, as is shown by the Louisi-
ana and Utah cases above cited. We are constrained to hold
that the statute (Rem. & Bal. Code, § 9235), creating the
lien as to real property taxes, makes the lien only incipient
or inchoate on March 1, to become a complete and enforcible
lien as of that date by relation, only upon the making of a
valid levy.

We are not blind to the fact that a contrary view finds
apparent support in the decisions of this court in *Klickitat
Warehouse Co. v. Klickitat County,* 42 Wash. 299, 84 Pac.
860, and *Puyallup v. Lakin,* 45 Wash. 368, 88 Pac. 578.
Those cases, however, construe only that part of the lien
statute relating to taxes on personal property. Even assum-
ing that this section was ever intended to apply to state
property it cannot apply here. As to such taxes, the statute
leaves no room for the application of the principle of rela-
tion. It fixes no specific date for the attaching of the lien.
It makes the time of "assessment" the date of the lien. Per-
sonal property being easily removed or dissipated, the lien
of the tax *ex necessitate* attaches as an immediate enforcible
remedy at the time of assessment. This is further made
manifest by the statutory provision for accelerating the time
of payment of personal taxes. Sections 9249 and 9250 of
Rem. & Bal. Code, empower the county treasurer to distrain
for personal taxes whenever in his judgment personal prop-
erty is about to be removed or dissipated, computing the tax
upon the rate of levy for the previous year. The lien is thus
by statute made complete, perfect, and enforcible prior to
the levy for the current year. Every purchaser of personal
property subsequent to the assessment, therefore, takes sub-

ject to a perfected and indestructible lien. No such provision for acceleration and computation is found as to real property taxes. The lien as to them is inchoate and unenforcible until the tax has been fully imposed by the levy for the current year. The passage of the title to the state in the interim therefore checks the ripening of the inchoate into a matured and perfect lien, makes it incapable of enforcement, in effect aborts and destroys it. The distinction seems plain. Moreover, as observed by Judge Donworth in *United States v. Pierce County, supra:*

"Further support for the position that the tax lien did not attach is found in the provision of the statute that 'as between a grantor and grantee such lien [of the taxes on real property] shall not attach until the first Monday of February of the succeeding year,' and the United States became the grantee long before that date."

Here also the state became the grantee long prior to February of the succeeding year. The cases are parallel.

Finally, that the certificates constitute a mere cloud and not a lien is further evident from the fact that neither the county nor the holder of the certificates has a remedy against the land. A lien without the incident of enforcibility *in rem* would be an anomaly, a shadow without substance. Statutory authority therefor being absent, the state cannot be involuntarily deprived of its title by judicial sale or otherwise.

"Art. 7, § 2 of the constitution, provides that the property of the United States and of the state, counties, and school districts and other municipal corporations shall be exempt from taxation. The purpose of this provision needs no argument to make it plain. It is enough to say that the whole people have said that property once acquired by a political subdivision of the state shall not be taken or its use impaired by sale to satisfy a tax. The logical conclusion from these observations is that, if property owned by a municipal corporation is not subject to a tax, property taken over by it under a statute that vests absolute title cannot be sold to satisfy a tax. To hold otherwise would defeat the

resolution of the people to preserve the character of property when once dedicated to a public use." *Gasaway v. Seattle*, 52 Wash. 444, 100 Pac. 991, 21 L. R. A. (N. S.) 68. See, also, *State ex rel. Trimble v. Superior Court*, 31 Wash. 445, 72 Pac. 89, 66 L. R. A. 897; *Carter v. State*, 42 La. Ann. 927, 8 South. 836, 21 Am. St. 404. The last case cited holds that, even when by legislative enactment individuals are authorized to sue the state, that fact does not authorize the issuance of an execution for the seizure and sale of property of the state to satisfy the judgment rendered in any such suit. It also holds that a statutory provision authorizing a judicial sale of state property would be unconstitutional, as an abandonment by the legislative department of the exclusive control of the state's property and revenues vested in it by the constitution.

From whatever angle the question is viewed, the certificates for the taxes of 1907 constitute no valid and enforcible lien upon the property, which passed to the state prior to the levy of the tax. They constitute a cloud upon the state's title which should be removed. The complaint stated a cause of action. The judgment is reversed.

MOUNT, C. J., MAIN, MORRIS, and FULLERTON, JJ., concur.