[No. 16497.  Department Two.  October 15, 1921.]

PUGET SOUND POWER & LIGHT COMPANY (*formerly named Puget Sound Traction, Light & Power Company*), *Appellant,* v. THE CITY OF SEATTLE *et al., Respondents.*

THE CITY OF SEATTLE, *Appellant,* v. PUGET SOUND POWER & LIGHT COMPANY *et al., Respondents.*[1]

TAXATION (105)—PERSONAL PROPERTY—LIEN ON REAL PROPERTY. A personal property tax against a taxpayer casts no cloud upon his real estate until the county treasurer, acting under authority of Rem. Code, § 9245, selects specific real property and charges it with the lien of the personal property tax.

SAME (222)—EQUITY (78)—ENJOINING COLLECTION OF TAX—DECREE—PLEADINGS AND ISSUES. In an action by a street railway company to restrain the collection of taxes on property sold by it to a city and to have the tax cancelled as a cloud upon the title to other real property, in which the city as defendant admitted the allegations of the complaint, and in a cross-complaint alleged essentially the same facts and prayed for the same relief, there was no issue between the company and the city as to the apportionment of the tax if valid, and the court was not required to adjudicate the portions due respectively from each.

SAME (105, 107)—PERSONAL PROPERTY—LIEN—WHEN ATTACHES—TRANSFER OF PROPERTY. Under Rem. Code, § 9235, providing that

[1]Reported in 201 Pac. 449.

taxes assessed on personal property shall be a lien from the date of assessment, a municipality which acquires a street railway property by purchase subsequent to the time such lien attaches takes the property, like an individual, subject to the lien of such tax.

STATUTES (24)—SUBJECTS AND TITLES—TAXATION—ASSESSMENT OF RAILROAD PROPERTY. The word "railroad" in the title of an act for the assessment of the operating property of railroads (Laws 1907, p. 132, ch. 78, and the amendatory act, Laws 1911, p. 62, ch. 21) which, in accordance with modern usage, generally covers street railways, is defined by the act itself (Laws 1907, ch. 78, § 2, subd. 6) as including street railways, and therefore the title is broad enough to cover the assessment of street railway property.

TAXATION (71)—EQUALITY AND UNIFORMITY—STREET RAILROADS—MODE OF ASSESSMENT. Laws 1911, p. 62, ch. 21 (amending § 12 of Laws 1907, ch. 78), providing that "all the operating property of street railroads shall be assessed and taxed as personal property," does not, by the inclusion of both real and personal property under the classification "operating property," violate either the equal protection clause of the Federal constitution or the uniformity of taxation sections of the state constitution, inasmuch as the classification of property for assessment is a matter of legislative policy, provided uniformity and equality exist in the classes.

SAME (71) — RAILROAD PROPERTY — ASSESSMENT — PROCEEDINGS—POWERS OF TAX COMMISSIONER—STATUTES—DIRECTORY OR MANDATORY PROVISIONS. The fixing of the assessment of street railway property by the tax commissioner, prior to the filing of reports by a railway company as enjoined by statute, was not violative of the equal protection and due process clauses of the Federal constitution, since its duty to make report was directory and not mandatory upon the tax commissioner.

Appeals from a judgment of the superior court for King county, Allen, J., entered December 10, 1920, in favor of the defendants, in an action to enjoin the collection of a tax, tried to the court. Affirmed.

*James B. Howe, Hugh A. Tait, Edgar L. Crider,* and *Norwood W. Brockett,* for appellant Puget Sound Power & Light Company.

*Walter F. Meier* and *Edwin C. Ewing,* for appellant City of Seattle.

*Malcolm Douglas* and *Howard A. Hanson,* for respondent King County et al.

MITCHELL, J.—The city of Seattle purchased from the Puget Sound Traction, Light & Power Company a street railway "system, property and equipment." The purchase was authorized by ordinances of the city duly approved by the mayor. The actual transfer of the property was effected by an instrument dated and delivered March 31, 1919, and a physical delivery of the property the same day. The conveyance contained in its provisions the following:

"It is also further agreed between the parties hereto that if at the time of the delivery of this deed any lien shall have attached to the property or any part thereof for the year 1919 for any tax for the year 1919, such lien shall not constitute a breach of warranty, and that if such tax shall become collectible the same shall be paid before the same shall become delinquent by the respective parties hereto in amounts proportional to the respective periods of time that the same parties are respectively in possession of said property during the year 1919."

On or after March 15, but prior to March 31, 1919, the state tax commissioner assessed that portion of the property of the company afterwards transferred to the city. The validity of that assessment is the one involved in this suit. It covered operating property and consisted of a substantial amount of real property, but more largely of personal property, and was assessed *in solido* as personal property. Subsequently the company unavailingly protested against the assessment to the state tax commissioner, and also before the state board of equalization, that the property was exempt from taxation. The assessment was in due time certified to the assessor for King county. Taxes were levied thereon and the county treasurer gave notice of his demand for the personal property taxes for the year 1919.

The company instituted this action to restrain the collection of the taxes and to have the same declared null and void and cancelled as a cloud upon the title to other real property belonging to the company. The city was made a defendant. The complaint prayed that, if the taxes be upheld, the judgment should require the city and the company to pay each its proportionate part in accordance with the agreement between them. The company alleged that the property became public property before any lien for taxes attached. The city admitted the allegations of the complaint and filed a complaint alleging essentially the same facts as the company and praying for the same relief. The county and its tax officers, who were the adversary defendants, admitted that the property was assessed as alleged, and claimed it was properly assessed by the state tax commissioner on March 15, 1919; that, at that time, the lien for taxes attached; and that when the city acquired title on March 31, 1919, it did so subject to the lien. ·

The superior court gave judgment in favor of the county and its officers, against both the company and the city, and declined to adjudicate the relative rights and obligations of the company and the city to an apportionment of the taxes under the terms of the contract of conveyance between them. The company and the city have appealed.

The contentions of both appellants are similar. In the company's brief it is claimed of assignments 1 and 2 that, if the property upon which respondents claim a lien was not subject to such lien, the alleged tax would constitute a cloud upon the title, and if it was subject to such lien, since appellants had contracted with each other to divide it, the court should have adjudicated their respective portions. The propositions are not made clear by argument. If by the first it is meant that the tax, being a personal property tax in the name

of the company, thereby casts a cloud on the title of real property the company still owns, the answer is that, by § 9245, Rem. Code; P. C. § 6952 (considered in *Scandinavian American Bank v. King County,* 92 Wash. 650, 159 Pac. 786), no such cloud can be cast until the county treasurer selects specific real property and charges it with the lien of the personal property tax. If it is meant that the cloud is cast upon the property assessed, then the answer is to be found in the disposition of the other assignments with reference to the validity of the tax. On the other point—apportioning the tax between the company and the city—it is claimed "equity having acquired jurisdiction, it was error on the part of the superior court not to adjudicate the entire matter." But the pleadings in the case show that no issue was formed upon the subject. If the taxes are paid without sale the respondents care not how the amount may be divided if more than one person pays them, and between those parties their pleadings in this respect are identical. They present no controversy with each other; there is nothing to adjudicate.

Next it is claimed that the property sold and delivered to the city was not subject to assessment or taxation for that year. In considering this assignment we assume for the moment that the assessment was made at a proper time by the proper officer, and that all the property was for such purpose properly classified as personal property, which will be later discussed herein. Appellants rely on art. 7, § 2, of the state constitution, and subd. 2 of § 9098, Rem. Code (P. C. § 6891), to the same effect. The constitutional provision is:

"The property of the United States and of the state, counties, school districts and other municipal corporations, and such other property as the legislature may

by general laws provide, shall be exempt from tax-
ation.''

Section 9235, Rem. Code (P. C. § 6979), enacted in
1903, provides:

''The taxes assessed upon real property shall be a
lien thereon from and including the first day of March
in the year in which they are levied until the same are
paid, . . . The taxes assessed upon personal prop-
erty shall be a lien upon all the real and personal prop-
erty of the person assessed from and after the day upon
which such assessment is made, and no sale or transfer
of either real or personal property shall in any way
affect the lien for such taxes upon such property.''

As to the lien, the statute lays down one rule for real
property and another for personal property. That, of
course, is a matter of legislative policy, unimportant
to the courts except as necessity arises to keep the dif-
ference clearly in mind. That difference is pointed out
in the case of *State v. Snohomish County*, 71 Wash. 320,
128 Pac. 667. It was a case in which real property
was sold to the state after it had been assessed,
but prior to the levy for that year. It was pointed
out that, in giving a lien for a real estate tax, the
statute contemplates a levy as well as an assess-
ment, while as to personal property, only an assessment
is required; and it was decided that, as the levy had not
been made at the time of the purchase, the state took
the real property free of any lien for taxes. In the
opinion the court said:

''We are not blind to the fact that a contrary view
finds apparent support in the decisions of this court in
*Klickitat Warehouse Co. v. Klickitat County*, 42 Wash.
299, 84 Pac. 860, and *Puyallup v. Lakin*, 45 Wash. 368,
88 Pac. 578. Those cases, however, construe only that
part of the lien statute relating to taxes on personal
property. . . . The lien is thus by statute made
complete, perfect, and enforcible prior to the levy for

the current year. Every purchaser of personal property subsequent to the assessment, therefore, takes subject to a perfected and indestructible lien. No such provision for acceleration and computation is found as to real property taxes. The lien as to them is inchoate and unenforcible until the tax has been fully imposed by the levy for the current year."

The case of *Puyallup v. Lakin*, just referred to, was one in which the court was asked to overrule the decision in the former case of *Klickitat Warehouse Co. v. Klickitat County*, holding that the lien attaches at the date personal property is assessed, but refused to do so, and specifically decided that the city of Puyallup, in purchasing a water plant after it had been assessed for taxation purposes but prior to the levy that year, took the same subject to the tax, and that the lien was not divested by devoting the property to a public use prior to the levy, stating:

"If the property had a lien upon it when it was purchased by the municipality, the municipality like an individual would take the property subject to the lien."

It is claimed the *Puyallup* case was, in effect, overruled by *Gasaway v. Seattle,* 52 Wash. 444, 100 Pac. 991. We do not so understand. It was a case in which the plaintiff sought to foreclose certificates of delinquent taxes upon lands condemned by the city that had paid the condemnation awards into court and the property was now devoted to a public use by the city. In the course of the opinion it was said:

"In *Puyallup v. Lakin, supra,* the property was purchased under a contract. The law of eminent domain and the special statute upon which this case rests were not under consideration. The city had the right of contract and, in the absence of any law exempting it from the burdens of its trade, it was bound to meet them. The difference between that case and this is that the one rests in simple contract, the other is sustained by

the sovereign power of the state. We are unwilling to extend the doctrine announced in the *Puyallup* case."

That is, there is a clear distinction between those cases where the city has acquired property by private treaty as compared with those cases where it has been acquired by condemnation—the one voluntary, the other involuntary. And the reasons for the difference are easily ascertained and shown by the decisions. Prior to the present statute creating a lien for taxes upon personal property from the date of the assessment, it was common knowledge that, under the former statutes, where personal property was listed in one year and the lien for taxes did not attach until the following year, large amounts of personal property changed hands or were removed from the county after the assessment and before the levy attached, and the taxes could not be collected. For this reason the state adopted its present policy. It is otherwise with real property, and particularly so as to the rights of all parties, including a lien for taxes, where the condemning party pays into court the amount of the award, whereupon a proper apportionment of the fund between the owner and any other having an interest therein or a lien thereon can be had by timely application to the court making the award. In the case of the disposition of personal property no such protection is afforded, and in such case, "if the property had a lien upon it when it was purchased by the municipality, the municipality, like an individual, would take the property subject to the lien." *Puyallup v. Lakin*, 45 Wash. 368, 88 Pac. 578; "The city had the right of contract and, in the absence of any law exempting it from the burdens of its trade, it was bound to meet them." *Gasaway v. Seattle*, 52 Wash. 444, 100 Pac. 991; "Every purchaser of personal property subsequent to the assessment, therefore, takes subject to a perfected and

indestructible lien." *State v. Snohomish County,* 71 Wash. 320, 128 Pac. 667.

It is further contended that the statutes under which the state tax commissioner acted are void as to the assessment of street railway property because the subject-matter is not within the titles of the acts. The acts are Laws of 1907, p. 132, ch. 78, entitled "An act to provide for the assessment of the operating property of railroads" and Laws of 1911, p. 62, ch. 21, entitled "An act to amend section 12, of chapter 78, Laws of 1907, relating to the assessment of the operating property of railroads, approved March 6, 1907, and declaring an emergency." There is a mountain of authority upon this subject, and scores of pages and cases are supplied us by counsel in their several briefs in this case. One can well understand how that in almost ancient days the word "railroad" did not convey to the common mind the idea of a street car drawn by a horse or a mule. But in the development of transportation facilities leading to the use of electricity and other power than steam, systems have been long since established, often connecting different cities, which, together with the change by which for the purpose of equality of taxation all such operating properties are assessed by state rather than county officers, have caused the term to gradually broaden, so that ordinarily the meaning of the word is not so restricted as formerly. That such is the case is illustrated by the acts of the legislature of this state, for in 1905, ch. 81, p. 145, in providing for a railroad commission the legislature found it necessary to declare that the terms road, railroad, railroad company, railroad corporation shall not apply to street railroads, electric railroads, or suburban or interurban railroads. Again, Laws of 1907, ch. 41, p. 57, in granting additional authority to cities of the first class to authorize the location, construction and operation of

railroads in, along, over or across highways, streets and public places, etc., it was deemed cautious to provide therein that the act should not be construed as applying to street railroads, etc. It was this same legislature that enacted ch. 78, p. 132, to provide for the assessment of operating property of railroads, wherein for the purposes of the act certain terms were defined (a common practice in modern legislation). Subdivision 6 of § 2 declares that the word "railroad" or words "railroad company" shall be considered for all purposes of assessment and taxation as including street railways, suburban railroads or interurban railroads, etc. In this case both sides quote from the case of *Omaha & Council Bluffs Street R. Co. v. Interstate Commerce Comm.*, 230 U. S. 324, 57 L. Ed. 1501. In that case it was said:

"The appellants cite decisions from twelve states holding that in a statute the word 'railroad' does not mean 'street railroad.' The defense cite decisions to the contrary from an equal number of states. The present record discloses a similar disagreement in Federal tribunals. For not only did the Commerce Court and the Circuit Court differ, but it appears that the members of the Commission were divided on the subject when this case was decided and also when the question was first raised in *Wilson v. Rock Creek Ry. Co.*, 7 I. C. C. 83."

And further in the same case it was said:

"But all the decisions hold that the meaning of the word is to be determined by construing the statute as a whole. If the scope of the act is such as to show that both classes of companies were within the legislative contemplation, then the word 'Railroad' will include Street Railroad. On the other hand, if the act was aimed at Railroads proper, then Street Railroads are excluded from the provisions of the statute."

The cases arise where the word or words are used in the body of statutes, and the apparent conflict is easily

accounted for by reference to the rule of statutory construction requiring observance of the context of the act and the manifest intention of the legislature—that is, the character of the statute and the purpose for which it was enacted. In the recent work, 22 R. C. L. 745 (railroads), it is said:

"The courts have held that the term 'railroad' is broad enough to include a street railway. Indeed, it seems that the words 'railroad' and 'railway' used in statutes will be held to apply to both commercial railroads and street railways, unless there is something to indicate the particular kind intended. Of course, though, by well settled rules of statutory construction, where it is sought to bring a particular line within the statutory scope of either of these two words, the controlling factor is the legislative intent. In accordance with that intent the line must be included or excluded."

The situation is illustrated by the case of *Front Street Cable R. Co. v. Johnson*, 2 Wash. 112, 25 Pac. 1084, 11 L. R. A. 693, cited and relied on by the appellants, wherein the word railroad was held not to mean street railroad, of which 1 Elliott, Railroads (2d ed.), § 6, p. 14, in a note, properly says it was the case of a statutory lien extended to the land, and, as the street railway company did not own the fee, this was the principal reason for holding the statute inapplicable.

Concerning the relation of the title of an act to its object, we have uniformly held that the title is sufficient if the object is fairly embraced therein and that it need not be a complete index thereof. In the very late case of *Fisher Flouring Mills Co. v. Brown*, 109 Wash. 680, 187 Pac. 399, former decisions of this court were reviewed to the effect that sound public policy and legislative convenience require a liberal construction of this provision of the constitution; that it has to do with legislative procedure and not with those guarantees of personal rights which it is the peculiar prov-

ince of the courts to protect. We think that street railroads were and are fairly included in the term "railroad" as used in the titles of the acts, and certainly such was the intention of the legislature as manifested by the express language of the statutes.

In the amendatory act of 1911 it is provided "that all the operating property of street railroads shall be assessed and taxed as personal property." It is contended by the appellants that this plan violates both the constitution of the state and the fourteenth amendment to the constitution of the United States. The provisions of the respective constitutions invoked are those pertaining to the equal protection of the laws, a uniform and equal rate of assessment and taxation on all property in this state, and § 3, art. 7, of the state constitution, which latter is as follows:

"The legislature shall provide by general law for the assessing and levying of taxes on all corporation property as near as may be by the same methods as are provided for the assessing and levying of taxes on individual property."

That there might arise a necessity for or the advisability of some different method in detail was contemplated and provided for by the constitution. Uniformity and fairness are the results to be achieved. In this case there is no question as to the amount of the assessment. In the trial, counsel for the company said: "We are not raising any point as to the valuation, but we are taking the position that the property which is on the tax roll and on which we are assessed includes the value of all the operating property, real and personal." It was decided in *Moeller v. Gormley*, 44 Wash. 465, 87 Pac. 507, that a lease of real property for thirty years was properly taxed as real property under the then existing statute. Thereafter (1907) the law was changed and provided that all leases of real property and lease-

hold interests therein for a term less than the life of the holder should be assessed and taxed as personal property, and in the case of *Metropolitan Building Co. v. King County*, 62 Wash. 409, 113 Pac. 1114, Ann. Cas. 1912C 943, this court said: ''We are bound by the statute, therefore, to determine the value of the leasehold as personal property.'' There is no vested right, either in a corporation or natural person, to have property assessed in any particular way. Such matters rest entirely within the control and discretion of the legislature. *Heilig v. City Council of Puyallup*, 7 Wash. 29, 34 Pac. 164. It is a question of uniformity and equality in the classes. ''The classification of property for assessment, where uniformity and equality exist in the classes, is a matter of legislative policy.'' *Ridpath v. Spokane County*, 23 Wash. 436, 63 Pac. 261. That there is ample reason for the classification made by the statute in this case is easily perceived. Street railways have no fee in the streets, their properties are largely personalty, while the commercial steam railways own their rights of way, and own extensive freight yards, terminal and station grounds.

That the statute providing for the assessment of the operating property, both real and personal, *in solido* does not violate the constitutional provision referred to is well sustained by the doctrine of *Northern Pac. R. Co. v. State*, 84 Wash. 510, 147 Pac. 45, Ann. Cas. 1916E 1166. In fact, the undisputed testimony in this case shows that this manner of assessment was specifically requested all prior years after and including 1914 by the tax agent of the traction company upon the score, as stated by him, that it saved work in his office.

One of the most exhaustive and instructive cases upon this subject is *Chicago & Northwestern R. Co. v. State*, 128 Wis. 553, 108 N. W. 557. It was contended in that case that the plaintiff's property was assessed

upon an unjust and different basis from that of other property, and particularly that of street railways and interurban railroads operated by electricity, and some other property, not belonging to railway companies, having to do with transportation of some sort, thus violating the constitutional rule of uniformity. But the supreme court of Wisconsin decided otherwise, saying: "The discretion of the legislature in this field is so broad that it is not competent for the court to mark the constitutional limitations of it other than at the farthest one might go without transcending all reason." That case contains a lengthy discussion of the subject and references to a large number of cases of the United States supreme court to show that this class of statutes does no violence to the fourteenth amendment to the Federal constitution, and "in general indicate that the Federal supreme court does not assume to deal with state laws, under the fourteenth amendment, that fall with any fairness within the field of classification." We are in accord with that view.

Lastly, it is contended that, even assuming the validity in all its parts of the statutes under which the assessment was made by the state tax commissioner, nevertheless the administration of the statute by that official in the manner followed by him in making the assessment denied to the company and the city the equal protection of the law and deprived them of property without due process of law, in contravention of the fourteenth amendment to the Federal constitution. It has already been noticed that the assessment was made prior to the date the city acquired the property. Section 5, ch. 78, p. 134, of the act of 1907, provides that every railroad company shall make and file with the board of state tax commissioners reports showing a number of enumerated facts concerning its business, property, capital and stock. Section 7 provides that

every such company shall be entitled, on its own motion, to a hearing to present evidence of any kind between the first day of April and the first day of May, relating to the value of the property of the company or to the value of the general property of the state.

In the present case the assessment was made on March 15, at which time the company had not filed its reports, and it is claimed that such reports are mandatorily required to be before the board to enable it to make a valid assessment under the law. However, there are other provisions of the act to be considered. Section 5 provides that the company shall make its report between January 1 and April 1 of each year; so that this company had already had the unimproved opportunity of two and one-half months to file its report prior to the assessment being made, and two months prior to March 1—the date arbitrarily fixed by statute for the commencement of the revenue and taxation year. Section 7 of the act provides: "The board, on or before the first day of March and the first day of June, in each year, according to their best knowledge and judgment, shall ascertain and determine the true cash value of the property of each railroad company within this state." At the date of the act the board of tax commissioners consisted of three members, but ch. 54, p. 210, Laws of 1917, created the office of state tax commissioner and gave him power and made it his duty to exercise all the powers and perform all the duties theretofore vested in and required to be performed by the state board of tax commissioners. It therefore appears that, if counsel's contention is correct that no assessment can be made by the tax commissioner until after the companies choose to send in their reports at the end of the time limited therefor by the statute, it would be almost, if not quite, impossible for the one commissioner to complete the assessments of the vast

amount of such properties in this state until long after the time fixed by the statute for the making of such assessments.

The reports, which may be sent in by the companies as early as January 1, must be considered as directory provisions of the statute only, so far as the power of the commissioner to make the assessment is concerned. Section 7, ch. 78, p. 137, Laws of 1907, provides: "Such hearing (before the commissioner) shall not impair or affect the right to a further hearing before the State Board of Equalization," which has power, "on application or of its own motion, to correct the valuation or assessment of the property of such company, in such manner as may in its judgment make the valuation thereof just and relatively equal with the valuation of the general property of the state." Section 10, ch. 78, p. 138, Laws of 1907. There is no complaint here that the amount of the assessment was too high. The valuation of the property taken for assessment purposes was much less than the value as fixed thereafter by the private contract between the company and the city when it was purchased. That such proceedings antedating the assessment, particularly those proceedings which are to be performed by the property owner, are directory and not mandatory upon the public authorities is well sustained by the cases. *Smith v. Newell,* 32 Wash. 369, 73 Pac. 369; *Coolidge v. Pierce County,* 28 Wash. 95, 68 Pac. 391; *County of Martin v. Drake,* 40 Minn. 137, 41 N. W. 942; *Torrey v. Millbury,* 21 Pick. (Mass.) 64; and 22 R. C. L. (taxation) 349. Nor does the procedure or plan of administering the law that was adopted by the commissioner in making the assessment in this case in any way violate the fourteenth amendment to the Federal constitution, or any guaranty contained in the state constitution. The pro-

cedure in no way affected the substantial justice of the tax itself, nor did it vitiate or in any manner affect the assessment. *Coolidge v. Pierce County, supra.* The doctrine and cases referred to in *Chicago & Northwestern R. Co. v. State, supra,* clearly applicable to the present case, meet all such contentions of the appellants.

Affirmed.

PARKER, C. J., MACKINTOSH, TOLMAN, and MAIN, JJ., concur.

## ON REHEARING.

[*En Banc.* June 12, 1922.]

PER CURIAM.—This cause was reargued before the court *En Banc* on May 22, 1922. Deeming ourselves fully advised in the premises, and a majority of the judges being of the opinion that the cause was correctly disposed of by the decision of Department Two, the judgment is affirmed for the reasons therein stated and as therein directed.