CROWN WILLAMETTE PAPER CO.,[1] PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 11358, 31010.   Promulgated November 13, 1928.

*Oscar Sutro, Esq., Cassius R. Peck, Esq., F. D. Madison, Esq., Alfred Sutro, Esq., H. I. Pillsbury, Esq., M. P. Madison, Esq.,* and *F. T. Smith, Esq.,* for the petitioner.

*Granville S. Borden, Esq.,* for the respondent.

---

[1] Pursuant to written stipulation and order entered November 6, 1928, the following proceedings involving the same issue as is involved in *Crown Willamette Paper Co.* are decided herewith: *Tulare Mining Co.* v. *Commissioner of Internal Revenue,* Docket No. 35437; *Western Transportation Co.* v. *Commissioner of Internal Revenue,* Docket No. 35438; *Western Transportation & Towing Co.* v. *Commissioner of Internal Revenue,* Docket No. 35439, and *Pacific Coast Supply Co.* v. *Commissioner of Internal Revenue,* Docket No. 35440.

OPINION.

MARQUETTE: In view of the stipulation made by the parties to this proceeding, there is left for decision only the question as to when state, county, and municipal taxes assessed under the laws of Oregon and Washington, accrued. The parties agree that the petitioner's books of account were kept on the accrual basis, and that the taxes in question are properly deductible from the petitioner's gross income for the years in which they accrued. It is the contention of the petitioner that these taxes accrued and became a liability in the year for which they were assessed but the respondent alleges that they did not accrue until the year immediately following.

The question thus presented has received our consideration on several occasions. In the case of *H. H. Brown Co.*, 8 B. T. A. 112, the facts were that the petitioner, which kept its books on the basis of a fiscal year ended June 30, accrued on its books as of June 30, 1922, local and state taxes in the amount of $3,821.24 assessed against it by the Commonwealth of Massachusetts and the town of North Brookfield, and it paid them on September 26, 1922. Under the laws of Massachusetts in force during the years involved the taxable year commenced on April 1 of each year and the taxes were due and payable in the October following. Taxes on real estate were assessed to the person who was either the owner or in possession thereof on April 1, and personal property was assessed to the owner in the town where he resided on April 1. The taxes assessed on real estate were made a lien thereon from April 1 in the year of assessment. In holding that the taxes in question accrued prior to June 30, 1922, and were properly deductible from the petitioner's gross income for the fiscal year ended June 30, 1922, although they did not become due and payable and were not paid until some time in the petitioner's succeeding taxable year, we said:

\* \* \* In *Ernest M. Bull, Executor*, v. *Commissioner*, 7 B. T. A. 993, we held that the estate tax imposed by the Revenue Act of 1918, accrued at the death of the decedent and could be deducted in that year if the books of the estate, which were kept on an accrual basis, accrued the tax as of that year. We there held that there was no merit in the contention that the taxes which were a fixed liability as of the death of a decedent were not deductible, where accounts of the estate were kept on an accrual basis, for the reason that such taxes were not due and payable until one year after the death of the decedent, and that such postponement of payment was merely remedial or procedural. In the present case the same line of reasoning obtains. In both cases the taxes were actual and real personal obligations existing in the year in which it was sought to take the deduction. It was pointed out in the *Bull* case that the exact amount of the tax could not be ascertained until all valuations and adjustments had been made. With respect to this contention, we said:

"The suggestion arises that it is difficult to determine the amount of the estate tax within the period when the first income tax of the estate must be computed and the return audited. This might well give pause. But it is usually no more difficult than the computation of the munitions tax involved in the *Yale & Towne* case, or that required by section 1207 of the Revenue Act of 1926, and the earlier regulations, and such difficulty as there may be is not sufficient to counterbalance the considerations already set forth."

The basic idea under the accrual system of accounting is that the books shall immediately reflect obligations and expenses definitely incurred and income definitely earned without regard to whether payment has been made or whether payment is due. Expenses incurred in the operations for a particular year are properly accrued in the accounts for that year, although payment may not be due until the following year. Under the accrual system, the word "accrued" does not signify that the item is due in the sense of being then payable. On the contrary, the accrual system wholly disregards due dates. Neither is it necessary that the amount of an incurred liability be accurately ascertained in order to accrue it. We are of the opinion that the taxes paid by petitioner to the Commonwealth of Massachusetts and to the town of North Brookfield in October, 1922, were liabilities of petitioner on April 1 of that year and were, under petitioner's system of accounting, deductible from the gross income of the fiscal year ending June 30, 1922.

To the same effect is our decision in *John Hancock Mutual Life Insurance Co.*, 10 B. T. A. 736. We think the decisions just cited are sound and we therefore hold that the taxes assessed by a State or a subdivision thereof accrue when they become liabilities of the taxpayer, that is, when they are definitely incurred, although payment may not be due or made until a later day. We must, therefore, in order to determine when the taxes involved in the instant proceeding accrued, inquire and ascertain when they were incurred so as to become liabilities to the petitioner.

Section 4268 of the laws of Oregon (Olson), provides that on or before the first Monday in March of each year the assessors shall procure for the county a blank assessment roll, and forthwith proceed to assess all taxable property within his county. Before the second Monday in September next following he is required "to enter in such assessment roll a full and complete assessment of such

taxable property " as is owned on March 1 of the year. Section 4291 provides that the assessor shall give public notice setting forth that on the second Monday in September the board of equalization will meet at the courthouse in his county and publicly examine the assessment rolls and correct all errors in valuation, description, or qualities of lands, lots or other property assessed by such assessor. Section 4296 provides that the board of equalization " shall complete said examination, correction and equalization within one month from the time it is by law required to meet, and, unless sooner completed, at the expiration of one month from the time the board is herein required to meet, the examination, correction and equalization of said assessment rolls shall be deemed to be completed." Section 4298 provides that the corrected rolls shall be returned to the assessor. Section 4299 permits an appeal from the action of the board of equalization within five days from the time the roll is returned to the assessor, but no proceedings for the levying or collection of the taxes shall be stayed by reason of the appeal. In the event of a decrease in the assessment by the court on appeal, the taxpayer is entitled to receive a refund. Section 4308 provides that the assessment roll must be delivered to the tax collector " not later than 45 days prior to the date provided by law when a penalty or interest charge is made for the nonpayment of any tax, or part of tax indicated in said roll." Section 4323 provides that the first half of the taxes shall be paid on or before the fifth day of April next following the assessment, from which date interest is charged. Section 4325 provides that the taxes imposed are a lien from and including the first day of March in the year in which they are levied in the case of realty, and, in the case of personalty, from and after the date when assessment is made.

Section 11109 of the Laws of Washington (Remington's Compiled Statutes of Washington), provides that all real property shall be listed and assessed biennially in every even-numbered year with reference to its value on the first day of March preceding the assessment, and that personal property shall be listed and assessed every year with reference to its value on the first day of March preceding the assessment. Section 11110 provides that the assessor shall complete the listing and placing of values on all real property by May 31 of each even-numbered year and on personal property annually. Section 11219 provides that the board of equalization shall meet annually on the first Monday in August for the correction of the list and may continue in session for three weeks; that the county assessors shall make a record of errors in descriptions, double assessments, or manifest errors in assessments, and shall file the same with the county board of equalization on the third Monday in November, when the board must reconvene for the sole purpose of

considering such errors, but that the board shall have no authority to change the assessed value of the property of any person, except as required "by the corrections ordered based on the record submitted by the county assessor." Section 11221 provides that the county auditor in each county shall forward the corrected list to the state auditor on or before the first Monday in September following each county equalization, and that he shall also before January 15 in each year transmit to the auditor of the State a complete abstract of the tax rolls. Section 11222 provides that the state board of equalization shall meet annually on the first Tuesday in September for the equalization of the assessments in the several counties in the State and may remain in session not to exceed 20 days. Section 11223 provides that the state board within 10 days after adjournment shall certify the amounts to be levied to each county auditor. Section 11224 provides that within 10 days after adjournment of the state board of equalization the state auditor shall transmit to each county auditor a transcript of the amounts to be levied and collected for State purposes. Section 11225 provides that by October 10 of each year the county commissioners, state and town councils, school directors, town officers, etc., shall certify the tax rolls to the county assessor, the amount of taxes levied upon the real and personal property in such county, city, town, school, road, or other taxing district. Section 11241 provides that on the first Monday in January next succeeding the levying of taxes the county auditor shall deliver to the county treasurer the tax rolls of the county, with a warrant attached authorizing the collection of taxes. Section 11272 provides that:

The taxes assessed upon real property shall be a lien thereon from and including the first day of March in the year in which they are levied until the same are paid. * * * The taxes assessed upon personal property shall be a lien upon all the real and personal property of the person assessed, from and after the date upon which such assessment is made. * * *

It may be observed that taxes on real property are by the laws of Oregon and Washington specifically made a lien on such real property from and including the first day of March of the year in which they are levied. These provisions need no construction; they are plain and speak for themselves. As to personal property, the taxes thereon are by the laws of the States named made a lien from and after the date when the assessment is made. Assessment is clearly distinguishable from levying and collecting the tax, as was pointed out by the Supreme Court of Washington in *City of Puyallup* v. *Lakin*, 45 Wash. 368; 88 Pac. 578. In that case the court in construing a statute which also provided that taxes assessed upon per-

sonal property should be a lien from and after the date upon which the assessment was made, stated:

It is contended by the appellant, first, that the property was not taxable, being the property of a municipal corporation; and, second, that even though the property was taxable, inasmuch as it was machinery incorporated into the public water system of the City of Puyallup, it was not subject to levy. The statute provides: "The taxes assessed upon personal property shall be a lien upon all real and personal property of the person assessed from and after the date upon which such assessment is made." And the result of this case depends upon the construction of this statute. It is the contention of the appellant that the phrase "taxes assessed" should be construed to mean taxes levied, and that, therefore, no lien attached until after the levy, which was made in October, subsequent to the sale of the property to the municipality. But this court, in the case of *Klickitat Warehouse Company* v. *Klickitat County*, 84 Pac. 860, placed a different construction upon this statute, and held the date of assessment to be the time when the assessor placed his valuation on personal property listed with him by the owner, and that the word "assessment," as used in the law, meant the valuation of property for taxation by the assessor, and not the levy of taxes by the commissioners.

While so far as we are able to find, the Supreme Court of Oregon has not judicially determined when an assessment is made within the meaning of the laws of that State, it held in *Waterhouse* v. *Clatsop County*, 50 Oregon 176; 91 Pac. 1083, that the extension of taxes on the assessment roll is no part of the assessment but is a step in the process of collection. The Oregon and Washington statutes providing that taxes assessed against personal property shall be a lien from the date of assessment are practically identical, and in our opinion are susceptible of and should be given the same construction.

It will be noted from the provisions of the Oregon and Washington statutes cited that in Oregon the assessor is required before the second Monday in September in each year "to enter in such assessment roll a full and complete assessment of such taxable property" as is owned on March 1 of the year, and that in Washington he is required to complete the listing and placing of values by May 31 of each year. In Oregon the correction of all assessments made by the assessor is required to be made within one month from the second Monday in September of each year and unless sooner completed is deemed by law to be completed on that day. In Washington all corrections of the assessment list are required to be made not later than the third Monday in November. It is not necessary for us here to determine the exact date within the taxable year when personal property taxes become a lien under the laws of Oregon and Washington. It is sufficient for the purposes of this case to say that in view of the statutes and the court cases cited it is clear the assessment is made and the lien fixed within the year for which the tax is assessed, and that the liability

for the tax is incurred at a date at least not later than the date on which the lien attaches.

It follows from what we have said that the taxes involved in this proceeding were incurred and constituted fixed liabilities of the petitioner prior to the expiration of the years for which they were assessed, and that since the petitioner's books of account were kept on the accrual basis they should be accrued and deducted in computing income for those years.

The tax will be computed on the basis of this decision and the stipulation entered into by the parties hereto.

*Judgment will be entered under Rule 50.*