[No. 5737. Decided March 15, 1906.]

KLICKITAT WAREHOUSE COMPANY, *Appellant*, v. KLICKITAT COUNTY *et al., Respondents.*[1]

TAXATION—ASSESSMENT—PERSONAL PROPERTY—LIEN—WHEN AT-TACHES. Under Laws 1903, p. 73, amending the revenue laws to make the lien for personal property taxes attach upon the assessment of the same, instead of in the following year, "assessment" must be construed to refer to the listing of the property by the county assessor, in order to remedy the evils evidently aimed at by the amendment, and the lien for taxes attaches immediately upon such listing.

Appeal from a judgment of the superior court for Klickitat county, Miller, J., entered December 20, 1904, upon findings in favor of the defendants, after a trial before the court without a jury, dismissing on the merits, an action to enjoin the collection of a tax. Affirmed.

*W. B. Presby* and *F. D. Chamberlain,* for appellant.

*E. C. Ward,* for respondents.

CROW, J.—This action was commenced by the Klickitat Warehouse Company, a corporation, appellant, to enjoin the respondents, Klickitat County and T. B. Montgomery, its treasurer, from selling two warehouses in said county, one at Goldendale and one at Centerville, Washington, for taxes on wheat assessed to Balfour-Guthrie & Co., of Portland, Oregon. The complaint alleged that the Northern Wharf & Warehouse Company, an Oregon corporation, built both of said warehouses in the year 1902, and on August 1, 1903,

1Reported in 84 Pac. 860.

sold them to appellant; that early in the year 1903 Klickitat county assessed both warehouses, and one hundred and sixty-five thousand bushels of wheat located therein, as the personal property of Balfour-Guthrie & Co.; that the total taxes on said wheat and warehouses was $2,509.96; that appellant tendered $133.20, the total tax on the warehouses, which respondents refused to accept, and that the respondents have advertised said two warehouses for sale to satisfy said entire sum of $2,509.96.

Respondents by their answer allege that said warehouses were the property of Balfour-Guthrie & Co. from the time of the listing of said warehouses and said wheat for taxation until August 1, 1903. Findings of fact were made in accordance with the respondents' contention, their substance in so far as they affect this opinion being that the Northern Wharf & Warehouse Company was not, at any of the times alleged in the complaint, the owner of said warehouses, but that said warehouses were built in the spring of 1902 by Balfour-Guthrie & Co., who continued to own the same until after the assessment of said warehouses and wheat contained therein; that the Northern Wharf & Warehouse Company performed certain acts in their construction as the agent of Balfour-Guthrie & Co.; that all acts of the Northern Wharf & Warehouse Company in the management of said warehouses, since the same were built, were also performed as agents of Balfour-Guthrie & Company, and that the treasurer of Klickitat county had, prior to the commencement of the action, advertised said warehouses for sale to satisfy the amount due for taxes thereon, and also on said wheat. Upon said findings, the court entered judgment in favor of respondents, from which judgment this appeal has been taken.

The first assignment of error is based upon the contention that the findings of fact made by the trial court were not sustained by the evidence. We have carefully examined the evidence, and are satisfied that the findings are fully warranted thereby, and will not disturb the same.

The principal assignment of error urged by appellant is based upon the contention that, under the law of this state, as it existed in 1903, the tax assessed against said wheat and warehouses, which were personal property, did not become a lien until after September 1, 1903. Prior to 1903, taxes assessed upon personal property became a lien upon all real and personal property of the person assessed from and after the first Monday of February next succeeding the date of their levy. Bal. Code, § 1740. On March 9, 1903, the legislature passed, with an emergency clause, an amendatory act (Laws 1903, p. 73), section 3 of which act provided that the taxes assessed upon personal property shall be a lien upon all the real and personal property of the person assessed, from and after the date upon which such *assessment* is made. As appellant acquired its warehouses on August 1, 1903, it now contends that such warehouses were not subject to any lien for taxes on said wheat for the year 1903, for the reason that, under said amendatory act, the assessment of personal property is not completed until the state board of equalization has fully discharged its duties; that said board does not meet until the first Tuesday in September (Bal. Code, § 1716), and hence no lien existed on the warehouses before they became the property of appellant. In support of this position appellant cites, *Hunt v. Fawcett*, 8 Wash. 396, 36 Pac. 318, where this court said:

"It appears from the pleadings that only such indebtedness as was incurred after the assessment of 1892 became operative was invalid, and it therefore becomes important to ascertain that date. It is claimed by the appellant that it was the 20th day of August, 1892, because upon that day the county board of equalization adjourned and the rolls were footed. But we are of the opinion that said assessment did not take effect until October 15, 1892. On that day the work of the state board of equalization was completed, and then, and not until then, did the value of the property in the county, for the purposes of state and county taxation, become fixed and certain."

In deciding when respondents' tax lien attached, it becomes necessary for us to construe § 3 of the act of 1903, and determine the meaning of the word "assessment" as there used. The ruling in *Hunt v. Fawcett* was undoubtedly correct, but in that case this court was passing upon the meaning of the word "assessment," as used in § 6, art. 8, of the constitution of this state, which fixes the method of arriving at the limit of municipal indebtedness. The word "assessment" may have different meanings according to its use. Welty, in his work on Assessments, at § 2, says:

"There is still another sense in which the word 'assessment' is used, and by which is meant an official listing of persons and property, with an estimate of the value of the property of each, for the purpose of taxation."

Respondents contend that the word "assessment," as used in § 3 of the act of 1903, refers to the act of the county assessor or his deputy in placing his valuation on personal property listed with him by the owner. We think this contention should be sustained. In construing this statute, we must inquire into the purpose sought to be accomplished by its enactment. It is common knowledge that, under the former statute, Bal. Code, § 1740, where personal property was listed in one year and a lien for taxes did not attach until the following February, large amounts of such property changed hands or were removed from the county after listing and before the lien attached, and the taxes could not be collected. The legislature evidently intended to remedy this evil by causing the lien to attach at an earlier date. To do this, it passed the act of 1903, adding the emergency clause with the evident intention of having liens attach immediately during the then current year. If appellant's contention is correct, and no lien attached until after September 1, 1903, the emergency clause was neither necessary nor of any value. The word "assessment," as frequently used in our revenue laws, undoubtedly refers to the act of the assessor in placing

his valuation on property listed with him. Bal. Code, § 1662, referring to migratory stock, reads as follows:

"When any cattle, horses, sheep or goats are driven into any county of this state for the purpose of grazing therein at any time after the first Monday in April in any year, they shall be liable to be assessed for all taxes leviable in that county for that year, the same as if they had been in the county at the time of the annual assessment, and it shall be the duty of the assessor in any county in which any of said stock are driven, to assess the same, and the taxes on said stock shall become due upon the assessment of the same, and the sheriff shall collect said taxes at once in the manner prescribed by law for the collection of delinquent taxes: *Provided,* That such stock has not been assessed in some other county in this state for that year."

The apparent purpose of this section was to enforce the collection of taxes upon stock before it could be driven out of the county, and the word "assessment," as used in the clause "and the taxes on. said stock shall become due upon the assessment of the same," undoubtedly referred to the assessment made by the county assessor. To hold otherwise would cause the act to become a dead letter.

Again, in Bal. Code, § 1704, the word "assessment" is used as referring to the duties and acts of the assessor in listing property, placing his valuation thereon, and entering the same upon his assessment books. In § 1714 it is provided that the county commissioners, as a board of equalization, shall examine and compare the returns of the assessment of the property of the county, evidently referring to the assessment made by the county assessor.

Taking into consideration the manner in which this word has been repeatedly used in our revenue laws, and the purpose sought to be accomplished by § 3 of the act of 1903, we hold that, under said section, the lien for taxes on personal property attaches to the personal property and real estate of the person assessed immediately when such personal property is listed with the county assessor, and he has placed his

valuation thereon. As these acts were fully performed prior to August 1, 1903, the taxes became a lien on said warehouses before appellant acquired its title.

The judgment is affirmed.

MOUNT, C. J., FULLERTON, HADLEY, ROOT, and DUNBAR, JJ., concur.