[No. 16467.  *En Banc.*  October 15, 1921.]

## C. B. W. RAYMOND, *Respondent,* v. KING COUNTY et al., *Appellants.*[1]

TAXATION (107)—PERSONAL PROPERTY—LIEN—TRANSFER OF PROP-
ERTY—STATUTES—CONSTRUCTION. Rem. Code, § 9235, providing that
taxes assessed upon real and personal property cannot be affected
in any way by sale or transfer of the property, must be construed
as inapplicable with respect to personal property, in view of Rem.
Code, § 9223a, which provides for the collection of delinquent per-
sonal property taxes by distraint of "sufficient goods and chattels
belonging to the person charged with such taxes to pay the same."

Appeal from a judgment of the superior court for
King county, Hall, J., entered April 4, 1921, in favor
of the plaintiff, in an action to enjoin the enforcement
of a personal property tax, tried to the court. Affirmed.

*Malcolm Douglas* and *Wm. Parmerlee,* for appel-
lants.

*C. M. Fouts* and *Alexander, Bundy & Swale,* for re-
spondent.

FULLERTON, J.—For some years prior to the year
1920, and until October 6 of that year, the Page &
Bolster Shingle Company was engaged, in King
county, in the business of manufacturing lumber and
shingles. On the specific date given, the company was,
at the suit of certain of its creditors, adjudged in-
solvent and placed in the hands of a receiver. At the
time of the appointment of the receiver, the company
owned, and had in its possession with other property,
some 312,000 feet of lumber, which had been manufac-
tured by it in the earlier part of the year 1920. This
lumber was sold by the receiver, on December 20, 1920,
under the order of the court, to the respondent
C. B. W. Raymond. In 1919, the Page & Bolster

[1]Reported in 201 Pac. 455.

Shingle Company owned certain other personal property on which a tax was assessed for that year in the sum of $120.20. The taxes were not paid, and after the sale of the lumber to the respondent, the sheriff of King county, under papers in distraint issued by the county treasurer, threatened to distrain and sell the lumber, or so much thereof as might be necessary to pay the taxes, with interest and costs. This action was thereupon begun by the respondent against the sheriff and the county treasurer to enjoin the threatened distraint. At the hearing a permanent injunction was entered, and the county officers appeal.

The statutes relating to the assessment and collection of taxes upon personal property are somewhat complicated, and to a certain extent confusing. While they perhaps contain no specific provision to that effect, they evidently contemplate that an assessment upon personal property is not only a lien upon the specific chattel assessed, but is a personal obligation of the owner of the chattel. With reference to the general lien of the tax, the statute contains this further provision, namely: (see Rem. Code, § 9235; P. C. § 6979).

"The taxes assessed upon personal property shall be a lien upon all the real and personal property of the person assessed, from and after the date upon which such assessment is made, and no sale or transfer of either real or personal property shall in any way affect the lien of such taxes upon such property."

Invoking the language of this section, the appellants contend that a personal property tax, no matter when or upon what property assessed, becomes a lien upon all the personal property owned by persons charged with the tax, whenever or however acquired, and that the lien follows the property into whosesoever hands it may subsequently fall.

It is our opinion that this is not the legislative meaning. To give the statute the construction contended for would be to say that a chattel, by mere sales and deliveries, could be charged with a constantly increasing burden. If, to illustrate, a person charged with a tax and owning a specific chattel should sell and deliver the chattel to another, the chattel would not only remain charged with the personal property tax of the seller, but would become immediately charged with the personal property tax of the purchaser; and a like result would follow from all subsequent sales until the chattel could be chargeable with the entire delinquency in the county. It would be to say, moreover, under the rule that a person destroying a chattel on which there is a specific lien becomes personally chargeable with the lien to the value of the property destroyed, that the patrons of an ordinary grocer could be held for the grocer's personal property tax to the extent of their purchases of groceries from him. Effects, such as these, would be intolerable to the business world. It would prevent traffic in personal property. No one, without the most careful research, could purchase from another a specific chattel with the assurance that he was acquiring an unencumbered title thereto, or with the assurance, if he so used the chattel as to put it out of the reach of the tax collector, that he would not thereafter be called to account for the value of the chattel.

But we think the statutes themselves show that the contention made misconstrues the legislative intent. The statutes from the earliest time have contained provisions similar to the provision now in question, declaring that the taxes assessed upon personal property shall be a lien upon all of the real and personal property of the person assessed, yet the statutes declaring

the lien have uniformly provided that any levy upon personal property to enforce the lien shall be made upon the personal property of the person charged with the tax. (See Code of 1881, §§ 2882, 2903; Hills Code, §§ 1131, 1096; Code of 1896, §§ 3752, 3758, 3745; Bal. Code, §§ 1740, 1727; Pierce's Code, 1912 ed., title 501, §§ 181, 215; Rem. & Bal. Code, §§ 9223, 9235; Rem. Code, §§ 9223, 9223a, 9235; Pierce's Code, 1919 ed., §§ 6979, 6957, 6958.) As to the manner of collecting delinquent personal property taxes, the latest enactment of the legislature is found in the Laws of 1915, p. 370, ch. 137. It is there provided that, in the event the treasurer is unable to collect such taxes in due course, he shall prepare papers in distraint, which shall contain a description of the personal property, the amount of the tax, the amount of the accrued interest at the rate of fifteen per cent per annum from March 15 of the year succeeding the levy, and the name of the owner or reputed owner, and shall file the same with the county sheriff, "who shall immediately without demand or notice, distrain sufficient goods and chattels belonging to the person charged with such taxes to pay the same, . . ." Manifestly, we think, had it been intended that the levy could be made upon any property the person charged with the taxes at any time owned while so charged, it would have been so stated in express terms, and the specific provisions, prescribing upon what property the levy should be made, would not have been so framed as to exclude the idea.

In none of our adjudicated cases has the precise question been determined. The decisions most nearly in point are *Mills v. Thurston County,* 16 Wash. 338, 47 Pac. 759; *Klickitat Warehouse Co. v. Klickitat County,* 42 Wash. 299, 84 Pac. 860, and *Puyallup v. Lakin,* 45 Wash. 368, 88 Pac. 578, where we held that

taxes levied upon specific chattels followed the chattels into the hands of purchasers purchasing from persons who were owners at the time the taxes were levied. The soundness of these decisions seems to have been questioned in the later case of *State v. Snohomish County,* 71 Wash. 320, 128 Pac. 667. But, be this as it may, the principle of the cases is not applicable to the present situation. A purchaser can protect himself against taxes levied upon a specific chattel, but he cannot do so as against a general lien such as is here contended for.

The judgment will stand affirmed.

PARKER, C. J., HOLCOMB, TOLMAN, MACKINTOSH, MITCHELL, BRIDGES, and MAIN, JJ., concur.