[No. 29398. Department Two. March 4, 1946.]

PUBLIC UTILITY DISTRICT NO. 1 OF LEWIS COUNTY, *Appellant,*
v. PIERCE COUNTY *et al., Respondents.*[1]

*Houghton, Cluck & Coughlin,* for appellant.

*Thor C. Tollefson* and *Theo. L. DeBord,* for respondents.

*The Attorney General* and *Jess N. Rosenberg, Assistant, amici curiae.*

ROBINSON, J.—This action was instituted to restrain the treasurer of Pierce county from seizing and selling certain personal property for nonpayment of taxes assessed during the year 1941. The appeal is from an order sustaining a

[1]Reported in 166 P. (2d) 933.

demurrer to the complaint on the ground that it did not state facts sufficient to constitute a cause of action and dismissing the suit.

The parties agree that but one question is involved in the appeal. The respondents state it as follows:

"Under Rem. Rev. Stat. 11265 and 11156-7, where operating personal property of an inter-county electric power and light company was assessed by the State Tax Commission between March 15th and June 30, 1941, and sold to a public utility district August 1, 1941, can said property be subjected to the payment of personal property taxes for 1941 when the tax was reviewed and corrected, apportioned to the counties September 4, 1941, and Pierce County's portion certified to the County Assessor the same day?"

The plaintiff, alleging itself to be a municipal corporation, further pleaded: that the property was owned by the Interstate Power and Light Company and constituted part of the intercounty operating property of that company; that the company was an electric light and power company within the definition of that term, as used in the statutes, providing for the assessment, for taxation purposes, of the operating property of electric light and power companies, and other like companies, by the state tax commission; that, on August 1, 1941, the Interstate Power and Light Company sold all of its operating property in Pierce and Lewis counties to appellant; that the personal property in question constituted all of the operating property of the company in Pierce county; that appellant has at all times since remained the owner of the property. The complaint recited in detail the steps that were taken by the state tax commission for the purpose of assessing the property for purposes of taxation.

On or before March 15, 1941, the Interstate Power and Light Company filed its annual report with the state tax commission, as required by Rem. Rev. Stat. (Sup.), § 11156-3 [P. P. C. § 983-5]. Between March 15, 1941, and June 30, 1941, the commission prepared an assessment roll, upon which it entered and assessed the true cash value of all of the operating property of the company as of January

1, 1941. In preparing the assessment roll, it described the property by general description only, as provided by Rem. Rev. Stat. (Sup.), § 11156-12 [P. P. C. § 983-23], and valued the entire operating property of the company as a single unit. On June 30, 1941, the commission notified the company, by mail, of the valuation of the company's entire operating property, as determined by the commission.

At its annual meeting in August, 1941, commencing August 16th, the state board of equalization reviewed, examined, and corrected the assessment roll prepared by the commission, and corrected the valuation of the operating property entered and assessed thereon in the manner as, in its judgment, made the valuation just and relatively equal with the valuation of the general property of the state. On September 4, 1941, the state board of equalization apportioned such valuation to the respective counties in which the property was located, and determined the equalized assessed valuation of such property in each of such counties. On September 4, 1941, the commission certified such equalized assessed value of the personal property to the county assessor of Pierce county, who thereupon entered such property upon the personal property tax rolls of the county, together with the valuation so apportioned.

Thereafter, the county assessor proceeded in the same manner as if the property had continued to be privately owned. He treated the equalized assessed value, as certified to him by the state tax commission, as the assessed valuation of the operating property in Pierce county for the year 1941, and extended taxes against the same on the tax rolls of Pierce county in the same manner and at the same rates as against privately owned property located in said county. The amount of the taxes thus levied against the personal property which appellant acquired in Pierce county on August 1, 1941, was $399.95. The tax roll, prepared as aforesaid, was certified by the county assessor and delivered to the county auditor of Pierce county. In January, 1942, the county auditor delivered the same to the county treasurer with a warrant authorizing the collection of the tax. The complaint charged that, prior to appellant's

acquisition of the property, no steps were taken by the Pierce county assessor to assess the property for the 1941 taxes. All of the foregoing allegations of fact were, of course, admitted by the demurrer.

The only statute of this state specifically fixing the date of the attachment of tax liens on personal property is Rem. Rev. Stat., § 11265 [now Rem. Supp. 1943, § 11265 (P. P. C. § 979-493)], which provides:

"The taxes assessed upon each item of personal property assessed shall be a lien upon such personal property from and after the date upon which the same is listed with and valued by the county assessor, . . ."

It will be noticed that this statute provides that taxes assessed upon each item of personal property shall be a lien upon such property from and after the date upon which the same is "listed with and valued by the county assessor."

The intercounty operating property of electric light and power companies and other intercounty utilities is not valued for taxation purposes by the county assessors, but by the state tax commission.

Rem. Rev. Stat. (Sup.), § 11156-7 [P. P. C. § 979-13], provides:

"The commission shall, beginning with the year 1936, and annually thereafter, make an assessment of the operating property of all companies; and between the fifteenth day of March and the first day of July of each of said years shall prepare an assessment roll upon which it shall enter and assess the true cash value of all the operating property of each of such companies as of the first day of January of the year in which the assessment is made. . . ."

Sections 11156-8 to 11156-11 [P. P. C. §§ 983-15 to 983-21], inclusive, set out certain rules, principles, and methods to be applied in making the assessment. It is provided in § 11156-12 [P. P. C. § 983-23]:

"Upon the assessment roll shall be placed after the name of each company a general description of the operating property of the company, which shall be considered sufficient if described in the language of subdivision (17) of section 11156-1, as applied to said company, following which shall be entered the actual cash value of the operating prop-

erty as determined by the commission. No assessment shall be invalidated by reason of a mistake in the name of the company assessed, or the omission of the name of the owner or by the entry as owner of the name other than that of the true owner. When the commission shall have prepared the assessment roll and entered thereon the actual cash value of the operating property of the company, as herein required, it shall notify the company by mail of the valuation determined by it and entered upon said roll."

Section 11156-13 [P. P. C. § 983-25] provides that, prior to July 20th, an assessed company may apply for and be granted a hearing, with opportunity to present evidence relating to the amount of the assessment.

Section 11156-14 [P. P. C. § 983-27] reads as follows:

"The assessment rolls of companies assessed under the provisions of this act shall be reviewed, examined and corrected by the State Board of Equalization at its annual meeting held in August for the purpose of equalizing the assessed valuation of the taxable property of the state and said State Board of Equalization may correct the valuation in such manner as may in its judgment make the valuation thereof just and relatively equal with the valuation of the general property of the state. The said State Board of Equalization shall not increase the valuation of any property on such assessment roll, without giving to the company at least five days' written notice by registered letter to appear and show cause, if any there be, why such valuation shall not be increased. Upon determination by the State Board of Equalization of the true and correct actual cash value of the property appearing on such rolls it shall apportion such value to the respective counties entitled thereto, as hereinafter provided, and shall determine the equalized assessed valuation of such property in each such county and in the several taxing districts therein, by applying to such actual apportioned value the same ratio as the ratio of assessed to actual value of the general property in such county; . . ."

Section 11156-16 [P. P. C. § 983-31] provides:

"When the state board of equalization shall have determined the equalized assessed value of the operating property of each company in each of the respective counties and in the taxing districts thereof, as hereinabove provided, the commission shall certify such equalized assessed value to the

county assessor of the proper county. The county assessor shall enter the company's real operating property upon the real property tax rolls and the company's personal operating property upon the personal property tax rolls of his county, together with the values so apportioned; *and the same shall be and constitute the assessed valuation of the operating property of the company in such county and the taxing districts therein for that year,* upon which taxes shall be levied and collected in the same manner as on the general property of such county." (Italics ours.)

Appellant contends that the only statutory provision for a lien for taxes is § 11265, above quoted, and that, prior to the time the property passed into public ownership, no completed lien had come into existence. Respondents contend that the tax was assessed or charged upon the property when the property was valued by the tax commission between March 15, 1941, and June 30, 1941, in accordance with the provisions of § 11156-7.

The question for our decision has been brought down to a very narrow one by the commendable frankness of respondents' counsel in making the following statement in their brief:

"In answer to the argument made by the appellant, we can say that we have already admitted that the property in the hands of a public body is exempt from taxation if it was in the hands of the public body at the time the lien to secure the enforcement of the tax attached to the property. . . . We will further admit that there was no lien to enforce the collection of taxes at common law and that the lien is a creature of the statute. . . . The case is one wholly for statutory interpretation and the outcome will depend upon the interpretation to be placed on the statutes particularly involved."

The respondents base their contentions largely upon the cases of *Puyallup v. Lakin,* 45 Wash. 368, 88 Pac. 578, and *Puget Sound P. & L. Co. v. Seattle,* 117 Wash. 351, 201 Pac. 449, 207 Pac. 689. When these cases were decided, as the opinion in each shows, the statute creating a lien on personal property—and it is with personal property that we are here concerned—read as follows:

"The taxes assessed upon personal property shall be a

lien upon all the real and personal property of the person assessed, from and after the date upon which such assessment is made, and no sale or transfer of either real or personal property shall in any way affect the lien for such taxes upon such property." Laws of 1903, chapter 59, p. 74, § 3.

In the *Puyallup* case, the ultimate question to be decided was: Under this statute, when do taxes on personal property become a lien? The answer to that question, of course, depended upon the answer to another: When is the assessment made? The court said:

"It is the contention of the appellant that the phrase 'taxes assessed' should be construed to mean taxes levied, and that, therefore, no lien attached until after the levy, which was made in October, subsequent to the sale of the property to the municipality. But this court in the case of *Klickitat Warehouse Co. v. Klickitat County,* 42 Wash. 299, 84 Pac. 860, placed a different construction upon this statute, and held the date of assessment to be the time when the assessor placed his valuation on personal property listed with him by the owner; and that the word 'assessments,' as used in the law, meant the valuation of property for taxation by the assessor, and not the levy of taxes by the commissioners. We are asked by the appellant to overrule the decision in this case as not being consistent with the law. The decision in that case was arrived at after a full presentation of the law and mature deliberation by this court, and notwithstanding the learned argument made by the appellant, we are convinced that a proper construction was placed upon the statute in that case, and therefore decline to overrule it."

In *Puget Sound P. & L. Co. v. Seattle, supra,* the city purchased all the system, property, and equipment of the local street railway system. The formal transfer was made on March 31, 1919, accompanied by physical delivery. After March 15th, but prior to March 31st, the state tax commission had assessed that property under the statute then governing the assessments of property of its class. Following the *Puyallup* case, the court held that the lien attached when the assessment was made.

It is said, in respondents' brief, that the only distinction

that can be made between the case at bar and the Puget Sound P. & L. Co. case is, in that case, the property involved was wholly intracounty, whereas, in this case, the property involved was partly in Pierce county and partly in Lewis county. We cannot agree with that contention. The statute, construed in *Puyallup v. Lakin* and applied in *Puget Sound P. & L. Co. v. Seattle*, has been succeeded by a statute which reads as follows:

"The taxes assessed upon each item of personal property assessed shall be a lien upon such personal property from and after the date upon which the same is listed with and valued by the county assessor, . . . " Rem. Rev. Stat., § 11265.

This language is clearly general and broad enough to include all personal property. The personal property involved in this case was at least not listed with the county assessor or—under a permissible construction of the statutory language—valued by him until September 4, 1941. Therefore, the tax so listed did not become a lien under that provision of the statute until September 4th, and it was not a lien when appellant acquired it on August 1, 1941, unless some other statute can be found which makes it so.

We find no other applicable statute. It is contended that a fair construction of chapter 123, Laws of 1935, p. 356 (Rem. Rev. Stat. (Sup.), §§ 11156-1 to 11156-20 [P. P. C. §§ 983-1 to 983-39]), shows a legislative intention to fix the attachment of liens for taxes levied under its provisions as of the time the property is assessed by the commission, which assessment is directed to be made some time between March 15th and June 30th of each year, and, in the instant case, was made on June 30th. We have digested the relevant provisions of the entire act earlier in this opinion and find nothing which we think supports this contention.

When the legislature passed the 1935 act, it must be presumed to have had in mind Rem. Rev. Stat., § 11265, which had then been in force for ten years and, as we have seen, made taxes assessed on personal property a lien from and after the date upon which it was listed and valued by the county assessor, that is, in the great majority of instances,

by March 1st. It is true, of course, that the amount of such liens may be varied by equalization some months later, but, in most cases, there is at least a figure placed on the books by which their approximate amounts can be determined as early as that date.

But, in the system set up by the 1935 legislature for the taxation of intercounty property, no listing of valuation of any kind is required until June 30th, and, what is more to the point, the assessment then required and made is merely a unit valuation. No segregation is set up as between the counties involved. For example, the personal property of an intercounty utility may be assessed or valued at $200,000. If a lien then attaches, it cannot be determined what the probable amount thereof is in favor of A county, and what, in favor of B county. Nothing can be determined as to that until there is a segregation, which is directed to be made by the commission in August and communicated to the assessors of the respective counties. In such a case, the valuation in one county may very well be $199,000, and in another, but $1,000. In fact, as the act provides, no lien whatever may attach in one of the counties involved in an intercounty assessment, however great the amount of the unit valuation. We quote the following proviso from Rem. Rev. Stat. (Sup.), § 11156-14:

"*Provided,* That, whenever the amount of the true and correct value of the operating property of any company otherwise apportionable to any county or other taxing district shall be less than $250, such amount need not be apportioned to such county or taxing district but may be added to the amount apportioned to an adjacent county or taxing district."

It may well have been the legislative opinion—at least we cannot say that it was not—that it was a desirable thing that the liens of the respective counties, for taxes on personal property of intercounty utilities, should attach in the same manner as liens on personal property generally; that is, when the valuation or assessment is placed upon the books of the assessors of the counties involved. Under the system the legislature was creating, these liens could not

possibly attach on the same day as liens on personal property generally. There would seem to be no compelling necessity why they should attach on June 30th, rather than after the segregation was made in August.

We are unable to arrive at the conclusion that the legislature intended the liens to attach when the unit valuation is made by the commission, some time between March 15th and June 30th, by any method of construction. We are so far unable to do so that, even if the general statute (§ 11265) was not in existence, and the statute of 1903, as construed in *Puyallup v. Lakin, supra,* and followed in *Puget Sound P. & L. Co. v. Seattle, supra,* was still in force, we would consider it at least very doubtful as to whether the liens attached when the unit valuation was made by the commission. These cases hold that the time of the assessment marked the fixation of the lien. Respondents contend that the assessment as to intercounty property is made when the commission fixes the unit value. But § 16, chapter 123, p. 370, of the 1935 act (Rem. Rev. Stat. (Sup.), § 11156-16), above quoted in full, says that, when the county assessors receive the segregated values of an intercounty utility from the commission, they shall enter them upon the personal property tax rolls of their respective counties:

" . . . and the same *shall be and constitute the assessed valuation* of the operating property of the company in such county and the taxing districts therein for that year, . . ." (Italics ours.)

Even if the 1903 act, which made the date of assessment the date of the creation of the lien, was still in force, it could very well be contended that, by the very terms of the 1935 act, the assessment is not made until the segregated value was placed upon the books of the assessors of the respective counties; for the 1935 act says that, when the entry is made by the assessor, "the same shall be and constitute the assessed valuation of the operating property of the company in such county . . ."

The appellant, by letters to the court and to adversary counsel, written after the submission of this case, con-

tends that the general demurrer, for want of facts, should not have been sustained, even if the taxes were a lien at the time it took title on August 1st, since, it being a municipal corporation, they were *ipso facto* discharged or merged in its title, citing *Halvorsen v. Pacific County,* 22 Wn. (2d) 532, 156 P. (2d) 907. This question was not raised in the court below, and we do not have the views of the trial judge regarding it; nor have we had the benefit of either written or oral argument by adversary counsel. So important a question should not be considered under such circumstances, and especially when, as here, its consideration would not affect the result of the appeal. We, therefore, following our own precedents, as well as the practice of courts generally in such situations, express no opinion with regard to it.

The judgment appealed from is reversed, and the cause remanded to the superior court of Pierce county with direction to overrule defendant's demurrer, and for such further action consistent herewith as further motions or pleadings may require.

BLAKE, BEALS, SIMPSON, and MALLERY, JJ., concur.