[No. 31610.   *En Banc.*   July 19, 1951.]

PUGET SOUND POWER & LIGHT COMPANY, *Appellant*, v. COW-
LITZ COUNTY *et al., Respondents.*[1]

¹Reported in 234 ·P. (2d) 506.

*Holman, Mickelwait, Marion, Prince & Black,* for appellant.

*The Attorney General* and *C. John Newlands, Assistant,* for respondents.

*Bogle, Bogle & Gates* and *Max Kaminoff, amici curiae.*

DONWORTH, J.—This action was brought to recover 1949 personal property taxes paid under protest to the county treasurer of each of the five counties named as defendants.

Five separate causes of action (one as to each county) were set forth in the complaint. The attorney general, appearing for the five counties, demurred to the complaint on the ground that it failed to state a cause of action as to any of the defendants.

After argument, the trial court in a written opinion upheld the position taken by the attorney general and later entered an order sustaining the demurrer. The taxpayer elected to stand on its complaint, and the trial court dismissed the action. From this judgment of dismissal, the present appeal has been prosecuted.

With the exception of the date of sale and the amount of taxes paid under protest, each of the five causes of action contained the same allegations, which may be summarized as follows:

Appellant is a corporation which is, and for many years has been, engaged in business in this state as an electric light and power company. It owns operating properties situated in several counties which were assessed as a unit by the tax commission in the year 1948, as a basis for computing the 1949 taxes payable thereon. The total assessed value of appellant's entire personal operating property as so assessed was equalized by the state board of equalization in August, 1948, and the equalized value was thereafter apportioned to the respective counties in which the property was located. On or about September 3, 1948, the tax commission certified to the respective county assessors the equal-

ized assessed value apportioned to each county and the taxing districts situated therein.

Thereupon, each county assessor entered the operating personal property located in his county on the 1949 personal property tax rolls in appellant's name as owner. This was not done prior to September 3, 1948.

In October, 1948, the respective boards of county commissioners levied taxes for the year 1949 upon all taxable property in their county (including appellant's personal operating property) in order to raise revenue for state, county, and other taxing district purposes. This levy was in each instance certified to the county assessor, who computed the taxes and extended the amounts thereof upon the tax rolls. The tax rolls were certified and delivered to the county auditor, who delivered them to the county treasurer. The latter proceeded to collect the 1949 taxes in accordance therewith.

Appellant sold its personal operating properties in each of the five counties to certain public utility districts on the following dates, respectively:

To P.U.D. No. 1 of Cowlitz county........May 21, 1948
To P.U.D. No. 1 of Mason county.........May 25, 1948
To P.U.D. No. 1 of Lewis county....September 22, 1948
To P.U.D. No. 1 of Pacific county....September 22, 1948
To P.U.D. No. 1 of Grays Harbor
    County .......................September 29, 1948.

Appellant's basis for claiming that the taxes involved were and are unlawfully collected by each of the five counties is stated in the last paragraph of each cause of action as follows:

"Under the constitution and laws of the State of Washington the said personal operating property of plaintiff, upon conveyance thereof to said Public Utility District No. 1 of Cowlitz County, became exempt from taxation, and from and after the date of such conveyance the taxing officers of the State of Washington and of the County of Cowlitz were without any power or authority to take any further steps whatsoever having for their object the assessment of said property or the levy or collection of any tax thereon for the

year 1949 and any tax levied or attempted to be levied upon said property for said year was and is unlawful and same never became a lien upon said property or upon any other property and was and is uncollectible from this plaintiff by any means whatsoever. Nevertheless, in order to avoid possible penalties for non-payment thereof and possible seizure and distraint of other property of plaintiff located in the State of Washington to enforce collection of said taxes, plaintiff, on or about May 29, 1949, paid to the County Treasurer of Cowlitz County the full amount of the taxes so levied for the year 1949 upon the said personal operating property of plaintiff located in Cowlitz County, such payment being made under written protest setting forth the grounds upon which such tax is claimed to be unlawful substantially as hereinabove set forth."

The single question presented is whether the personal property described in the complaint was subject to taxation in view of the following provision of the fourteenth amendment of our state constitution, which was adopted in November, 1930:

"Property of the United States and of the state, counties, school districts and other municipal corporations . . . shall be exempt from taxation."

The trial court's decision upholding the tax was based on our cases of *Puyallup v. Lakin,* 45 Wash. 368, 88 Pac. 578, and *Puget Sound Power & Light Co. v. Seattle,* 117 Wash. 351, 201 Pac. 449, 207 Pac. 689, which will be discussed later in this opinion.

Appellant takes the position that, since the constitutional provision makes no distinction between real property and personal property, the rule applied in *State v. Snohomish County,* 71 Wash. 320, 128 Pac. 667, to the exemption of real property should be applied here to personal property, and that the two cases above cited upon which the trial court relied should be distinguished.

The decision here depends on whether the taxation process had been completed on the respective dates on which title to the personal property passed from appellant to the various public utility districts. It is conceded that no levy had been made by the county commissioners in any instance

until after the sale was consummated and title had vested in the public utility district.

The procedure prescribed by statute for assessing property for purposes of taxation is substantially the same as it was in 1907 when the tax involved in *State v. Snohomish County, supra,* was imposed. The valuation date is now January first of the year before the taxes are payable (Rem. Rev. Stat. (Sup.), § 11112 [P.P.C. § 979-59]), whereas it was formerly March first.

In the case last cited, the state had purchased certain lands for a reformatory, the title to one parcel passing to the state on May 8, 1907, and the other on August 9, 1907. The question for decision was whether real estate which was in private ownership on the assessment date (March 1, 1907), but was owned by the state when the taxes were levied in October, 1907, could be subjected to the payment of those taxes. Since this is the leading decision on the subject of the present controversy, we quote from the opinion rather extensively:

"But we are not relegated solely to this general principle. It is the public policy of this state, as declared both by constitutional provision and by statutory enactment, that property belonging to the nation, state, any school district, county or municipal corporation, shall be exempt from taxation. Const., art. 7, § 2; Rem. & Bal. Code, § 9098. This being premised, let us examine the statute prescribing the lien for taxes in the light of the general process of taxation, in order to determine whether, either expressly or by implication, the taxes for 1907 ever became a lien upon the property in question. The statute declaring the lien is as follows:

" 'The taxes assessed upon real property shall be a lien thereon from and including the first day of March in the year in which they are levied until the same are paid, but as between a grantor and grantee such lien shall not attach until the first Monday of February of the succeeding year. The taxes assessed upon personal property shall be a lien upon all the real and personal property of the person assessed, from and after the date upon which such assessment is made, and no sale or transfer of either real or personal property shall in any way affect the lien for such taxes upon such property.' Rem. & Bal. Code, § 9235.

"It will be noted that this section contemplates a levy as well as an assessment in according the lien for a real estate tax, while as to personal property taxes the word 'assessment' alone is used. It will also be noted that this section does not expressly, nor by necessary implication, authorize a lien for taxes upon state property, at any time nor upon any condition. Such a lien can, therefore, be sustained only upon the theory that it attached as a complete and subsisting lien prior to the passing of the property into public ownership. The attachment of the lien here provided for, as and from March 1, in the year of the levy, presupposes that a valid levy as affecting the particular property can and will be made by following the general taxation law developing a valid tax. As pointed out by Judge Donworth in *United States v. Pierce County,* 193 Fed. 529, an examination of the many sections of that law makes it clear that March 1 is arbitrarily taken as the beginning of the taxation year. The process of taxation is initiated on that day by the assessor then beginning the valuation of all property in the county, fixing the valuation of each property as of that date. The work of valuation necessarily covers a considerable period of time. As the next step in the process, the board of equalization, meeting in August, revises the assessment as made by the assessor. Thereafter, in September, and as another step in the process, the corporate authorities of the cities, towns, and school districts estimate the amount of revenue needed for their respective uses; *and finally, as the last step in the process of taxation, the board of county commissioners and other taxing authorities in October levy the tax in specific sums. Then for the first time the concept of a tax is fully realized.* The fact that the lien of the tax so created is by relation attached to specific property as of the date of the initiation of the process on March 1, cannot do away with the necessity of pursuing the whole statutory proceeding before any tax is created so as to attach as a lien as of that or any date. While the state has power for the purposes of the lien to treat the entire proceeding as having been taken at any given time, that fact does not do away with the necessity of any step in the proceeding. *It seems self-evident that there can be no valid or effective lien for a tax until there is a valid tax in some specific amount.*

"Obviously the doctrine of relation presupposes a valid creation. It seems equally plain that the creation of a valid tax implies the existence of a susceptible subject of taxation at every stage of the process of such creation. Since,

on general principles of public policy and by both constitutional declaration and statutory enactment, lands while held in public ownership are exempt from taxation, the land here in question was not, during any step in the proceedings creating the tax, *after August 9, 1907, when it passed to the state, a susceptible subject of taxation. It follows that, at that time, the developing process of imposing the tax as a valid creation was arrested."* (Italics ours.)

■ The constitutional provision under consideration is self-executing (51 Am. Jur. 506, Taxation, § 500). It makes no distinction between real and personal property. The people of this state have in the constitution solemnly declared that *the property* of municipal corporations shall be exempt from taxation. It does not say that only their real property shall be exempt. The demurrer in this case admits that, before any tax had been levied, all the property involved had been sold to municipal corporations. Therefore, we hold it was not subject to the payment of 1949 taxes.

■ Under these circumstances, neither may the legislature override the plain intent and meaning of this constitutional provision by enacting lien laws providing that the tax, when levied, relates back to January first, nor may the courts do so by holding that the tax lien *ex necessitate* attaches at the time of assessment. No possible loss of public revenue warrants a defiance of the constitution by any of the three co-ordinate branches of government.

The case of *Puyallup v. Lakin*, 45 Wash. 368, 88 Pac. 578, cited by the attorney general and referred to by the trial court, is squarely in point on its facts, but no reference was made in it to the constitutional provision then in effect (Art. VII, § 2). This court held that the ownership of the personal property at the date of assessment controlled for the purpose of determining taxability and not the ownership at the time of levy. The decision followed a construction of the statute adopted in *Klickitat Warehouse Co. v. Klickitat County*, 42 Wash. 299, 84 Pac. 860, in which no public property was involved.

In our decision in *State v. Snohomish County, supra*, the *Puyallup* case was distinguished in this manner:

"We are not blind to the fact that a contrary view finds apparent support in the decisions of this court in *Klickitat Warehouse Co. v. Klickitat County*, 42 Wash. 299, 84 Pac. 860, and *Puyallup v. Lakin*, 45 Wash. 368, 88 Pac. 578. Those cases, however, construe only that part of the lien statute relating to taxes on personal property. Even assuming that this section was ever intended to apply to state property it cannot apply here. As to such taxes, the statute leaves no room for the application of the principal of relation. It fixes no specific date for the attaching of the lien. It makes the time of 'assessment' the date of the lien. Personal property being easily removed or dissipated, the lien of the tax *ex necessitate* attaches as an immediate enforcible remedy at the time of assessment. This is further made manifest by the statutory provision for accelerating the time of payment of personal taxes. Sections 9249 and 9250 of Rem. & Bal. Code, empower the county treasurer to distrain for personal taxes whenever in his judgment personal property is about to be removed or dissipated, computing the tax upon the rate of levy for the previous year. The lien is thus by statute made complete, perfect, and enforcible prior to the levy for the current year. Every purchaser of personal property subsequent to the assessment, therefore, takes subject to a perfected and indestructible lien. No such provision for acceleration and computation is found as to real property taxes. The lien as to them is inchoate and unenforcible until the tax has been fully imposed by the levy for the current year. The passage of the title to the state in the interim therefore checks the ripening of the inchoate into a matured and perfect lien, makes it incapable of enforcement, in effect aborts and destroys it. The distinction seems plain."

What was said by the court, in the above case, relating to personal property taxes was pure *dictum*, there being no such taxes involved, and is to be disregarded as authority in this case. The case of *Puyallup v. Lakin, supra*, being, in our opinion, contrary to the applicable provision of the state constitution, is hereby overruled.

Next, we consider *Puget Sound Power & Light Co. v. Seattle*, 117 Wash. 351, 201 Pac. 449, 207 Pac. 689, involving the taxability of the street railway property sold by this same appellant to the city on March 31, 1919. The property, which "consisted of a substantial amount of real property but more largely of personal property," was assessed *in*

*solido* prior to the sale. This court quoted the then applicable constitutional provision (Art. VII, § 2), but made no further reference to it. The decision was based on an interpretation of the statute relating to assessments for taxation, concerning which the court said:

"Section 9235, Rem. Code (P. C. § 6979), enacted in 1903, provides:

" 'The taxes assessed upon real property shall be a lien thereon from and including the first day of March in the year in which they are levied until the same are paid, . . . The taxes assessed upon personal property shall be a lien upon all the real and personal property of the person assessed from and after the day upon which such assessment is made, and no sale or transfer of either real or personal property shall in any way affect the lien for such taxes upon such property.'

"As to the lien, the statute lays down one rule for real property and another for personal property. *That, of course, is a matter of legislative policy, unimportant to the courts* except as necessity arises to keep the difference clearly in mind. That difference is pointed out in the case of *State v. Snohomish County*, 71 Wash. 320, 128 Pac. 667. It was a case in which real property was sold to the state after it had been assessed, but prior to the levy for that year. It was pointed out that, in giving a lien for a real estate tax, the statute contemplates a levy as well as an assessment, while as to personal property, only an assessment is required; and it was decided that, as the levy had not been made at the time of the purchase, the state took the real property free of any lien for taxes." (Italics ours.)

After discussing the difference between real and personal property with reference to taxation, the court further said: "For this reason the state adopted its present policy." We ask: Who is the state? Is it the people, who in their constitution have adopted the policy of exempting *all* property of municipal corporations, or is it the legislature, which attempted to adopt one policy as to realty and another as to personalty? Is it a matter of legislative policy unimportant to the courts when a policy is adopted in defiance of the popular will as expressed in the constitution? A negative answer is obvious.

In 11 Am. Jur. 651, Constitutional Law, § 44, it is stated:

"The state Constitution is the mandate of a sovereign people to its servants and representatives. No one of them has a right to ignore or disregard its mandates; and the legislature, the executive officers, and the judiciary cannot lawfully act beyond the limitations of such Constitution."

In the cited case, the applicable mandate of the constitution was ignored, and the statute was construed as requiring the street railway property to be taxed. In so far as the case of *Puget Sound Power & Light Co. v. Seattle, supra,* is inconsistent with the views herein expressed, it is hereby overruled.

■■ We hold that the exemption from taxation granted in the fourteenth amendment to the state constitution applies with equal force to both real and personal property acquired by a municipal corporation, and that, since there can be no valid tax until there has been a levy specifying the amount thereof (51 Am. Jur. 621, Taxation, § 656), and since title to the operating properties involved in this case passed to the several municipal corporations prior to the date of the levy, these properties were not subject to 1949 taxes.

The attorney general further argues that appellant is personally liable for these taxes because it was the owner of these properties on January 1, 1948. In support of this argument, he refers to Rem. Supp. 1943, § 11265 [P.P.C. § 979-493], which reads:

"The taxes assessed upon each item of personal property assessed shall be a lien upon such personal property from and after the date upon which the same is listed with and valued by the County Assessor, and no sale or transfer of such personal property shall in any way affect the lien for such taxes upon such property. The taxes assessed upon personal property shall be a lien upon each item of personal property of the person assessed, distrained by the Treasurer as provided in section 86 of this act, from and after the date of the distraint and no sale or transfer of such personal property so distrained shall in any way affect the lien for such taxes upon such property. The taxes assessed upon personal property shall be a lien upon the real property of the person assessed, selected by the County Treasurer and

designated and charged upon the tax rolls as provided in section 112 of this act, from and after the date of such selection and charge and no sale or transfer of such real property so selected and charged shall in any way affect the lien for such personal property taxes upon such property."

We pointed out in *Public Utility Dist. No. 1 of Lewis County v. Pierce County*, 24 Wn. (2d) 563, 166 P. (2d) 933, that the property of an intercounty utility is assessed under the provisions of Rem. Rev. Stat. (Sup.), §§ 11156-1 to 11156-20 [P.P.C. §§ 983-1 to 983-20], and not under § 11265. Even if appellant's property had been assessed under the provisions of § 11265, the result would be the same. We held in that case that it could be very well contended that the assessment was not made until the segregated values were placed on the books of the several county assessors.

Incidentally, this court in the *Pierce County* case did not pass upon the constitutional question which is involved here because it was not properly raised by the parties.

The attorney general calls our attention to the following decisions in which this court has referred to personal property taxes as the personal obligation of the owner of the chattel: *Spokane County v. Annis*, 43 Wash. 655, 86 Pac. 1066; *Porter v. Yakima County*, 77 Wash. 299, 137 Pac. 466; *Scandinavian American Bank v. King County*, 92 Wash. 650, 159 Pac. 786; *Raymond v. King County*, 117 Wash. 343, 201 Pac. 455; *Wilberg v. Yakima County*, 132 Wash. 219, 231 Pac. 931, 41 A. L. R. 184; *Fowler v. Snohomish County*, 149 Wash. 530, 271 Pac. 587; *Lahn & Simons v. Matzen Woolen Mills*, 149 Wash. 538, 271 Pac. 830; *Mogan v. Larson*, 183 Wash. 287, 48 P. (2d) 621; *Libby, McNeill & Libby v. Ivarson*, 19 Wn. (2d) 723, 144 P. (2d) 258; *Palace Fish & Oyster Co. v. Bean*, 32 Wn. (2d) 56, 200 P. (2d) 753.

■ However, we are satisfied that this court never intended to intimate that the owner of personal property was personally liable for the taxes levied thereon. In the absence of statutory authority, he is not subject to suit by the county to compel payment. In the event of nonpayment, three possible remedies are available to the county:

(1) to enforce the statutory lien on the items of personal property assessed;

(2) to enforce the statutory lien on other items of personal property owned by the same taxpayer by distraint by the county treasurer;

(3) to enforce the statutory lien on real property owned by the same taxpayer by selection thereof by the county treasurer.

By no other method may payment of the "personal obligation" of the taxpayer be enforced.

In this case, none of these remedies can be followed by the county for the reason that no valid tax has been levied against the personal property here involved, and consequently there is nothing upon which any of these statutory liens could be based.

Since we are of the opinion that the self-executing provision of the constitution quoted above exempts the personal property formerly owned by appellant from the taxes involved in this case, no distinction can be made between the two sales consummated prior to the date of listing (September 3, 1948) and the three sales consummated subsequent thereto and before the levy of the taxes.

For the reasons stated herein, we hold that neither the personal property described in the complaint nor appellant's other real or personal property is subject to any lien to enforce payment of the 1949 taxes which appellant paid under protest.

Under the allegations of the complaint, appellant is entitled to recover the respective amounts so paid to respondents. The trial court was in error in sustaining respondents' demurrer.

The judgment of dismissal is reversed, with instructions to overrule respondents' demurrer to the complaint and to proceed in accordance with the views expressed herein.

SCHWELLENBACH, C. J., BEALS, HILL, GRADY, HAMLEY, and WEAVER, JJ., concur.

FINLEY, J. (dissenting)—As the majority opinion emphasizes, the fourteenth amendment to our state constitution

provides that property of the United States and of the state, counties, school districts, and other municipal corporations shall be exempt from taxation. This proposition, of course, is universal and might very well be the law without specific constitutional provision. 2 Cooley, The Law of Taxation (4th ed.), § 621, p. 1312; 1 Desty on Taxation, § 15, p. 45 *et seq.*; see *State v. Snohomish County*, 71 Wash. 320, 128 Pac. 667. But at first glance, at least, it seems a little startling to find it regarded as controlling in the present case. Is any sort of public body being charged with a tax here? Obviously not. The Puget Sound Power and Light Company, a private utility, has been assessed for payment of the tax in question and has, in fact, already paid it. It is difficult for me to believe that either the fourteenth amendment or its predecessor, Art. VII, § 2, which set forth the same exemption, was drafted with any thought of allowing private companies to avoid taxation in situations of the sort we now have before us. In my opinion, the amendment has no proper application to the case here on appeal.

To reiterate, the crux of the matter is simply this: In the case at bar, it is not sought to tax the personalty assessed as the property of the public utility districts, *but rather as the property of Puget Sound. The latter owned the personalty* on January 1st of the year of assessment. Taxation of the then owner is the objective, and realistically that is the end result. It is proper, justified, and even required by the language of the pertinent statute, which reads as follows:

"For the purpose of taxation all real and personal property in the state shall be listed and assessed with reference to its value and ownership on the first day of January at 12 o'clock meridian in the year in which it is assessed." Rem. Rev. Stat. (Sup.) § 11112-1 [P.P.C. § 979-61].

Such provisions are by no means uncommon among the statutes of the several states. They are uniformly construed to mean that taxes shall be charged to the individual owning the property assessed on the tax day. See *Wangler Bro's v. Black Hawk County*, 56 Iowa 384, 9 N. W. 314; *Blossom v. Van Court*, 34 Mo. 390; *Wildberger v. Shaw*, 84 Miss. 442, 36 So. 539. The language of *County of Martin v. Drake*, 40

Minn. 137, 139, 41 N. W. 942, is typical. There the court stated:

"All tax laws have to fix upon some particular date in the year at which to determine the taxability as well as the ownership and value of property, for purposes of assessment and taxation. Our revenue laws have fixed this at the 1st of May. . . . Personal property is assessed and taxed with regard to both its value and ownership at that date. . . . Every man must pay taxes on what he then owns, and at its then value, no matter how short a time he may have owned it, or how soon thereafter it is lost. All property, if in being as taxable property at that date, is liable to taxation for that year at its then value, although it may only have come into being the day before, and may be in whole or in part destroyed the day after."

With respect to real property, a rule that it must be assessed with reference to its ownership on a particular day has no practical significance. In the state of Washington, the only way in which taxes on realty may be collected is by the assertion of a lien on the land itself. Rem. Supp. 1943, § 11265 [P.P.C. § 979-493]. The lien follows the land, and if the owner on the tax day chooses subsequently to sell or otherwise dispose of his property, there is no way in which he may personally be held responsible at the time of levy. In the usual situation, at least, the taxing authority is in no degree hampered by this limitation. Real property is not transitory. Its attributes or characteristics are not greatly subject to change. Ordinarily, it may be readily identified and reached in satisfaction of the tax due.

But this is not necessarily true as to personalty. It often may be transferred out of the taxing jurisdiction, or destroyed, or concealed, or so commingled with other goods as to be unrecognizable. If the only remedy of the taxing authority were to assert a lien on the property assessed, it is apparent that there would be many situations where, because of the occurrence of one or more of the above events, it would be impossible ever to collect the tax due. For this reason, three remedies have been made available to the taxing authority in the event of nonpayment of taxes on personal property: First, as with realty, enforcement of a

statutory lien on the specific items of property charged; second, enforcement of a statutory lien on other personal property owned by the same taxpayer; and third, enforcement of a statutory lien on his real property.

It will be seen that the two latter of these remedies involve proceedings against the owner of the personal property taxed, regardless of the fact that he may no longer be the owner at the time the proceedings are brought. To make such remedies effectual, it is necessary to establish a particular time when ownership of personal property, for tax purposes, is determined. Our legislature has specifically fixed January 1st as the pertinent date, irrespective of the date of levy. After January 1st, the owner may ship his property to Alaska; he may burn it; he may sell it to a tax-exempt public utility district; but he still remains liable for payment of the tax due on it. That is the necessary implication of the cases cited above, and the only reasonable interpretation of the words of our statutes.

Thus, in a very real sense, taxes on personal property remain the "personal obligation" of the owner of that property. The numerous Washington cases cited in the majority opinion have not erred in so stating. While the "personal obligation" label or concept may not precisely describe the situation in the sense that no action will lie to enforce the obligation, and the remedy of the taxing authority is strictly limited to the procedures set forth in the statutes, such considerations should not be material here. "A distinction is to be drawn," says Judge Cooley, "between taxes which are personal obligations of the owner although he may not be sued therefor, and taxes which are not personal obligations of the owner for which he may not be sued." 3 Cooley, Taxation (4th ed.) 2624, § 1327. As a source, this author cites *Midland Guaranty & Trust Co. v. Douglas County,* 217 Fed. 358, 362, where the court stated:

"It thus appears, while each piece of real estate is liable only for the taxes upon it, and the owner thereof is not personally liable therefor, the personal taxes become a personal obligation of the owner, but do not subject the owner

ordinarily to a suit, not because he is not liable, but because, the law having provided adequate means for their collection, that remedy is exclusive."

Actually, taxes are assessed against the owners of property, although it is common practice to speak of them as being assessed against the property itself. Gray, Limitations of Taxing Power and Public Indebtedness 582, § 1172. As Cooley expresses it, the *individual and not the property* pays the tax. 1 Cooley, Taxation (4th ed.) 93, § 24. When this is kept in mind, it will be seen that the constitutional provision exempting public property from taxation simply has nothing to do with a situation where the property in question —whatever its subsequent history—was privately owned on the tax day, and where the statute provides other remedies against the delinquent taxpayer than resort to the specific property assessed. Puget Sound, having owned the personalty here involved on January 1st, should be taxed on the theory that its tax obligation was a personal one and did not cease when the property was sold to the public utility districts any more than it would have ceased had the same personalty been sold to another private utility.

. The majority makes the decision turn on whether the taxing process—the administrative details or mechanics—had been completed on the respective dates on which title to the personal property passed to the various public utility districts (assuming that if the taxing process had been completed, the property would constitutionally be subject to the tax lien). Consideration of this might well be necessary if, in this case, the counties were attempting to follow the property and to enforce liens upon specific personalty assessed, owned, as it now is, by the tax-exempt public utility districts. At least that is the theory of *State v. Snohomish County*, 71 Wash. 320, 128 Pac. 667, which holds that the "concept of a tax" is not fully realized until a levy is made; that there can be no valid and effective lien for a tax until there is a valid tax in some specific amount; that therefore the lien on the property taxed remains inchoate until the levy; and that if, at that time, the property is in public

ownership, the lien cannot attach by reason of the constitutional and common-law rule that public property is not a susceptible subject of taxation.

Whether the court in *State v. Snohomish County* was correct in holding that a tax lien will not attach to property until levy is actually made, is at least a debatable question. See *Puyallup v. Lakin,* 45 Wash. 368, 88 Pac 578; *Puget Sound Power & Light Co. v. Seattle,* 117 Wash. 351, 201 Pac. 449; *Jersey City v. Montville,* 84 N. J. L. 43, 85 Atl. 838; *Santa Monica v. Los Angeles County,* 15 Cal. App. 710, 115 Pac. 945; and particularly *Public Utility District No. 1 of Lewis County v. Pierce County,* 24 Wn. (2d) 563, 166 P. (2d) 933, wherein this court, construing the identical statutes with which we are here concerned, held that taxes on the property of an intercounty utility became a lien at the time when the property involved was listed with and valued by the county assessor. Such would seem to be the plain command of Rem. Rev. Stat., § 11265, which we held to be controlling in that case. It is true that the reasoning of the opinion in *State v. Snohomish County, supra,* suggests that when the legislature stated that a lien should exist from the time of listing, it could only have meant that an "inchoate" or "incipient" lien would attach, pending levy, when this lien would "ripen" or "mature." But to adopt this rationale would seem to me to invoke an entirely theoretical concept in order to overrule what would otherwise appear to be clear legislative intent.

In the present case, however, it makes no difference when the lien attached, and we need not decide the point. The counties here are not attempting to seize public property in satisfaction of alleged liens. Assuming *arguendo* that a tax lien does not come into complete existence until levy is made, it is important to remember that the single factor which prevented the maturity of the lien in the *Snohomish County* case was that the only property to which it could attach was in the possession of the state. That is apparent from the portion of the decision quoted in the majority opinion. In this circumstance, a serious constitutional ques-

tion was presented; as the court said in *Bannon v. Burnes,* 39 Fed. 892, 899 (cited in the *Snohomish County* case at pages 324 and 325 of the Washington Reports), where Kansas City was attempting to assert a tax lien on property which, after assessment but before levy, had been acquired by the Federal government:

"If the right of the state or its subordinate municipality be conceded to proceed to enforce by levy and sale a tax after the acquisition of the title by the government, the legal sequence would logically follow that the state could enter upon this territory, over which it had ceded jurisdiction to the United States, and oust the government officers, its judges, and ministerial officers, and deliver over the property to the purchaser, which is precisely what was sought to be accomplished by the institution of this action in the state court."

No similar end is sought to be accomplished by the taxing authorities here. Even admitting that tax liens cannot attach until levy; and conceding further that a lien cannot attach to the assessed property at all if at the time of levy it is in the hands of a public body and consequently tax-exempt; still, no constitutional or other inhibition should prevent the statutory tax liens against the *other* property of the taxpayer from attaching. The question of the counties' power to foreclose their tax lien against the property owned by public utility districts has nothing whatever to do with the liability of Puget Sound. By virtue of Rem. Rev. Stat. (Sup.), § 11111-2, Puget Sound's liability—resulting from the fact of ownership and based on the quantum of property owned—was fixed on January 1st; after that date, nothing remained to be accomplished except the grinding away of the administrative machinery of tax collection at an admittedly slow but practicable speed. It is true that the property assessed passed into tax-exempt hands during the tax procedure lag; but that fact is immaterial, since no attempt is here being made to foreclose on the property actually sold. To repeat an analogy, Puget Sound is in exactly the same position as if its property had been shipped to Alaska or burned. In neither of these cases could the coun-

ties have enforced their liens against the specific personalty assessed; but it is equally clear that in neither of them could the tax-date (January 1st) owner escape tax liability.

. *Wood v. McCook Water-Works Co.,* 97 Neb. 215, 217, 149 N.W. 417, is a case somewhat similar on its facts to the case at bar and deals adequately with the problem presented. In that case, the statute provided that personal property should be listed with reference to the quantity owned on April 1st. In May, the county assessed the plant of the Mc-Cook Water-Works Co. at a specified sum. On July 1st, the company sold and transferred its plant to the city of Mc-Cook. A levy against the property was made for state purposes on July 27th, and another for county, state, and school district purposes on August 3rd. The tax was not paid and the county brought an action to recover the amount due from the waterworks company. Defendant stated the question involved as follows:

"The property having been transferred into the hands of the city of McCook, where it was exempt from taxation, prior to the time the assessment was completed, and levy of tax made, and prior to the time when the tax would become a lien upon the property, was the attempted taxation void?' "

The court answered in the negative, and in the course of a discussion of the case of *New York v. Commissioners,* 104 U. S. 466, 26 L. Ed. 632, made the following comment (page 220):

"It will be observed that the court expressly holds that one who owns property subject to taxation at the time when it is returnable for assessment and taxation cannot escape liability for the tax by subsequently changing the character of his property by investing it in other property which would render it not subject to taxation. Suppose defendant, on July 1, had sold its property which had been assessed, and with the money obtained from the sale had purchased United States bonds, could it have escaped the payment of taxes? Clearly not. The fact that the assessment and the tax subsequently levied thereon had not become a lien upon the property, so as to make a purchaser thereof liable for the tax, is entirely immaterial. *The city, of course, took the*

*property free from any lien of the tax, but this did not relieve the defendant of its liability therefor."* (Italics mine.)

The logic of the *Wood* case is applicable here. In sum: Puget Sound, in common with other owners of personalty, became liable for the payment of county taxes on its operating properties on January 1, 1948, no matter what the amount of these taxes might subsequently prove to be. After January 1st, but before levy, Puget Sound sold the personalty to tax-exempt public utility districts. When tax liability in actual dollars and cents was finally determined, Puget Sound became liable to pay it, and payment could have been enforced at any time by foreclosure of a lien against its other property. Whether the constitutional and common-law rule forbidding the taxation of property in public ownership would have prevented the enforcement of the statutory lien against the personalty sold to the public utility districts, is a matter we need not consider; it is not involved in this case. Certainly, Puget Sound should not escape the tax liability it acquired as a private owner on January 1st, merely because, prior to the completion of the process of tax collection, the property, ownership of which furnished the basis for liability, was placed beyond the reach of the taxing authorities.

Without exaggerating, or intending to "parade the horrible" it can be suggested that at the present time the revenue and appropriation programs of some counties may be in a no less confused and difficult state than are those of the state of Washington. Such a suggestion is not too far-fetched if we follow the newspapers and other sources of reliable public information. In other words, some counties may be faced already with a situation that presents, or closely approximates, a real financial problem. With sales of personal property to exempt agencies running into thousands of dollars, and the defense program of the Federal government on the upswing, we should not, without a clear showing that the law requires it, hamper unduly the operation of the taxing process the legislature has set up. In the protection of taxpayers, the constitution does not require

and the courts need not impose unreasonable and unjustified restrictions upon those sometimes misunderstood and often maligned public servants who administer our tax laws.

It is my best judgment that the trial court should be affirmed.

MALLERY, J., concurs with FINLEY, J.

---

October 4, 1951. Petition for rehearing denied.

